UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

UNITED STATES OF AMERICA,          :

                                       12 Cr. 134 (BMC)

       - against -               :

IBRAHIM SULEIMAN ADNAN ADAM HARUN,    :     (Electronically Filed)

                 Defendant.         :

------------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S
MOTION FOR AN ANONYMOUS AND PARTIALLY SEQUESTERED JURY**

JOSHUA L. DRATEL
JOSHUA L. DRATEL, P.C.
29 Broadway
Suite 1412
New York, New York 10006
(212) 732-0707

DAVID STERN
ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP
100 Lafayette Street
Suite 501
New York, New York 10013
212-571-5500

SUSAN G. KELLMAN
25 Eighth Avenue
Brooklyn, New York 11217
718-783-8200

*Attorneys for Defendant
Ibrahim Suleiman Adnan Adam Harun*

  – Of Counsel –
Joshua L. Dratel
David Stern
Susan G. Kellman

TABLE OF CONTENTS

Table of Contents.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

POINT I

THE GOVERNMENT HAS FAILED ENTIRELY
TO SATISFY THE STRINGENT STANDARDS
FOR EMPANELING AN ANONYMOUS JURY   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A.      *The Standard for Determining Whether an Anonymous Jury Is Necessary.*. . . . . . . . . . . 5

B.      *The Government Has Not Presented Sufficient Allegations*
        *Regarding Juror Security With Respect to Mr. Hausa or This Case.*. . . . . . . . . . . . . . . . 7

        1.      *There Are Not Any Allegations or*
                *Evidence of Attempts to Obstruct Justice.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2.      *The Mere Invocation of* al Qaeda *Is Not Sufficient*
                *to Justify an Anonymous Jury In This Case.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        3.      *The Offenses Alleged In This Case Are*
                *Insufficient to Justify An Anonymous Jury.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        4.      *Publicity Related to This Case Is*
                *Insufficient to Justify An Anonymous Jury.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        5.      *Transparently Unbelievable Instructions to Jury Will Not Alleviate*
                *the Prejudice to Mr. Hausa, But Will Simply Aggravate It.* . . . . . . . . . . . . . . . . . . 17

        6.      *Far Less Extreme Measures Can Be Adopted to Protect the Privacy of Juror*
                *Information Without Prejudicing Mr. Hausa's Right to a Fair Trial.* . . . . . . . . . 18

Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

TABLE OF AUTHORITIES

CASES

*Coffin v. United States*, 156 U.S. 432 (1895)................................................. 5

*Commonwealth v. Angiulo*, 615 N.E.2d 155 (Mass. 1993)............................... 6

*Estelle v. Williams*, 425 U.S. 501, 504 (1976)................................................ 5

*United States v. Abu Ali*, 05 Cr. 53 (E.D. Va.)............................................... 16

*United States v. Aldawsari*, 11 Cr. 15 (SRC) (N.D.Texas)............................... 15

*United States v. Al-Hussayen*, 03 Cr. 48 (EJL) (D. Idaho)............................... 15

*United States v. Amuso*, 21 F.3d 1251 (2d Cir. 1994)................................... 6-7

*United States v. Aref*, 2004 Cr. 402 (TJM) (N.D.N.Y.)................................... 15

*United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995)................................. 12

*United States v. Bellomo*, 954 F. Supp. 630  (S.D.N.Y. 1997)........................ 5, 12

*United States v. Coonan*, 664 F.Supp. 861 (S.D.N.Y. 1987).......................... 13-14

*United States v. Cromitie*, 09 Cr. 558 (CM) (S.D.N.Y.)................................ 14

*United States v. Holy Land Foundation*, 04 Cr. 240 (N.D. Tex.)..................... 15

*United States v. Mehanna*, 09 Cr. 17 (GAO) (D. Mass.)................................ 15

*United States v. Melendez*, 743 F.Supp. 134 (E.D.N.Y. 1990)........................ 13

*United States v. Millan-Colon*, 834 F.Supp. 78 (S.D.N.Y. 1993)..................... 13

*United States v. Moalin*, 10 Cr. 4246 (JTM) (S.D. Cal.)............................... 16

*United States v. Mohamud*, 10 Cr. 475 (GMK) (D.Ore.)............................... 15

*United States v. Mostafa*, 7 F.Supp.3d 334 (S.D.N.Y. 2014)............... 4, 9-13, 16, 18-19

*United States v. Paccione*, 949 F.2d 1183, 1192-93 (2d Cir. 1991)................. 13

*United States v. Paracha*, 03 Cr. 1197 (SHS) (S.D.N.Y.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Rahman*, 93 Cr. 181 (MBM). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Ressam*, 99 Cr. 666 (JCC) (W.D. Wash.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

*United States v. Sabir*, 05 Cr. 673 (LAP) (S.D.N.Y.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

*United States v. Siddiqui*, 08 Cr. 826 (RMB) (S.D.N.Y.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Siraj*, 05 Cr. 104 (NG) (E.D.N.Y.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Thai*, 29 F.3d 785 (2d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*United States v. Thomas*, 757 F.2d 1359 (2d Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4-7

*United States v. Tomero*, 486 F. Supp. 320 (S.D.N.Y. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Tutino*, 883 F.2d 1125 (2d Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

*United States v. Vario*, 943 F.2d 236 (2d Cir. 1991). . . . . . . . . . . . . . . . . . . . 1, 4, 7-10, 12, 16

*United States v. Wong*, 40 F.3d 1347 (2d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

## OTHER AUTHORITIES

Local Rules of the United States District Courts

   For the Southern and Eastern Districts of New York, Local Criminal Rule 23.1. . . . . . 17

N.Y. R. Prof'l Conduct R. 3.6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

N.Y. R. Prof'l Conduct R. 3.8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

N.Y. R. Prof'l Conduct R. 8.4(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

N.Y. R. Prof'l Conduct R. 8.4(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

English, T.J., *The Westies: Inside New York's Irish Mob* (St. Martin's Paperbacks: 1991). . . . 14

**Introduction**

This Memorandum of Law is in submitted on behalf of defendant Ibrahim Suleiman

Adnan Adam Harun (hereinafter "Mr. Hausa" because that is how the case is denominated in

ECF filings) in opposition to the government's motion for an anonymous and partially

sequestered jury in this case.  For the reasons set forth below, it is respectfully submitted that the

government's motion should be denied in its entirety.

As detailed below, the government's motion is premised predominantly, albeit in various

guises, on grounds that have been rejected as a basis for an anonymous jury:  namely, the general

nature of the case.  Nor are any specific contentions made by the government sufficient to justify

an anonymous jury in a case in which the defendant is in solitary confinement, without any

contacts in the United States other than his lawyers, and is completely shut off from the outside

world – and who does not even appear in court.

Moreover, the prejudice to Mr. Hausa from juror anonymity will be substantial and

irremediable.  That prejudice has been exponentially amplified by the government's public filing

of its motion, which is replete with an entirely gratuitous recitation of the facts of the case – in

essence, the government's opening, evidentiary presentation, and summation – and wholly

unnecessary references to terrorism and terrorist organizations that have been reported in a wide

range of news media since the government chose to file its motion publicly.

As the Second Circuit has cautioned repeatedly, the empaneling of an anonymous jury is

an unusual and drastic measure that is justified only when the government establishes that it is

"genuinely called for."  *United States v. Vario*, 943 F.2d 236, 239 (2d Cir. 1991);  *United States

v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994).

1

Applying that admonition, as well as the three-pronged balancing test it has formulated (if the government's motion clears initial hurdles), the Second Circuit has repeatedly and consistently held that this deviation from standard methods of jury selection is permissible only under circumstances in which the government has made a convincing showing of a "strong reason to believe the jury needs protection." *United States v. Thomas*, 757 F.2d 1359, 1365 (2d Cir. 1985).

Yet nowhere in the government's motion papers is any acknowledgment of this important limitation on employing an anonymous jury. Indeed, the government – directly contrary to the Second Circuit's admonition – urges the Court to grant the motion because it contends such requests have been "routinely approved" in this District. *See* Government's Memo of Law, at 2.

As a result, the government abjectly fails to meet the formidable standard for empaneling an anonymous jury, a step both drastic and dramatic, which the Second Circuit and other courts have recognized "undoubtedly has serious implications for a defendant's interest in effectively conducting *voir dire* and in maintaining the presumption of innocence." *United States v. Wong*, 40 F.3d 1347, 1376 (2d Cir. 1994). Yet the government's motion papers are devoid of any recognition of that essential principle of the criminal justice system, or of its overriding importance to a fair trial.

In fact, as discussed below, in terrorism cases in which there have not been anonymous juries, there has not been a single issue of juror security reported – again, before, during, or after trial. In addition, homicide cases involving local gangs regularly occur in this district and in the neighboring Southern District of New York without anonymous juries. The government's motion here represents simply an attempt to capitalize on the public's fear of terrorism, and to

2

amplify the already prejudicial impact of the charges to eliminate the possibility that Mr. Hausa can receive a fair trial.

Nor are jurors naive, or uninformed, or ultimately fooled by the government's proposed explanation for their anonymity.  Jurors are well aware that high-profile cases proliferate in the Eastern and Southern Districts of New York, and that high-profile status is *not* the benchmark for juror anonymity.  Indeed, a number of cases involve daily saturation coverage by print, broadcast, cable, and electronic media without a single request for an anonymous jury.

Consequently, jurors unmistakably get the message conveyed by preserving their anonymity:  the defendant is dangerous, and you are a potential victim of his.[1]  Thus, the trial would end before it began, and the evidentiary portion and deliberations would be a mere procedural formality.

Moreover, there are other, sensible, non-prejudicial means of protecting juror information. Juror questionnaires[2] could be completed without identifying the juror other than a code that would be identifiable only through a key system that would ensure that the candid and private information communicated in the questionnaire in response to questions about juror

---

[1]  Already Mr. Hausa has been prejudiced by the government's public filing of its motion, which is available to anyone with access to PACER – media, the public, prospective jurors.  That public filing has also resulted in considerable media coverage of the motion itself, thus further diminishing the ability to provide the jurors any excuse for their anonymity at trial.  Even if the Court were to deliver the government's proposed instruction, the genuine motivation for the government's motion is far too transparent, and the devastating prejudice unavoidable.  *See, e.g.,* Ray Sanchez, "Al Qaeda suspect awaits trial, warned 'war is not over,'" *CNN.com*, April 12, 2016, available at <http://cnn.it/20zGyZ0>;   John Marzulli, "Terror suspect in Brooklyn court accused of high-level ties to Al Qaeda, other terrorist groups," *The New York Daily News*, April 12, 2016, available at <http://nydn.us/22qv75i>.

[2]  The defense will be moving for use of a comprehensive juror questionnaire, an element of *voir dire* with which the government apparently agrees.  *See* Government Memo of Law, at 23.

backgrounds and attitudes remain confidential and secure.

The government has failed to clear the considerable hurdles it must leap to justify an anonymous jury.  Empaneling an anonymous jury in this case would unfairly burden the presumption of innocence and should be rejected in favor of less extreme measures to protect juror privacy.  An anonymous jury would poison the atmosphere of the case and serve to bolster the government's case by creating the impression that the defendant is dangerous and guilty, and that the jurors themselves are targets – making a guilty verdict all but a foregone conclusion.

## ARGUMENT

### THE GOVERNMENT HAS FAILED ENTIRELY TO SATISFY THE STRINGENT STANDARDS FOR EMPANELING AN ANONYMOUS JURY

As noted **ante**, the Second Circuit has repeatedly cautioned that empaneling an anonymous jury is an unusual and drastic measure that is justified only when the government establishes that it is "genuinely called for."  *Vario*, 943 F.2d at 239;  *United States v. Thai*, 29 F.3d at 801;  *United States v. Mostafa*, 7 F. Supp.3d 334 (S.D.N.Y. 2014), *citing Vario*, 943 F.2d at 239, and *Thomas*, 757 F.2d at 1365.[3]

Departing from the traditional methods of jury selection requires, according to the Second Circuit, that the government establish a "strong reason to believe the jury needs protection." *Thomas*, 757 F.2d at 1365.  In *Mostafa*, a terrorism case tried two years ago, the Court held that the government had failed to satisfy that rigorous standard.  7 F. Supp.3d at 336.  Here as well, as discussed below, the government has not met that considerable burden.

---

[3]  In *Thai*, at least two of the defendants had threatened and ultimately killed a civilian witness in an effort to thwart prosecution of a robbery case against other members of the defendants' violent urban street gang.  29 F.3d at 801.

**A.**     ***The Standard for Determining Whether an Anonymous Jury Is Necessary***

The importance of the interests that are burdened by an anonymous jury requires that it be

"a measure that should be taken only with care."  *United States v. Bellomo*, 954 F. Supp. 630,

654 (S.D.N.Y. 1997) (granting application because government presented "substantial evidence

that suggests a threat to the judicial process in this case" [*id*., at 655]).[4]

In *Thomas*, the Second Circuit considered the impact of an anonymous jury on the

presumption of innocence to which the defendant is entitled throughout the trial:

> [t]he elementary principle that a shield of innocence surrounds a
> defendant on trial reached back in history at least to early Roman
> law.  *See Coffin v. United States*, 156 U.S. 432, 453-54 [] (1895).
> Recognition of this principle and its enforcement are part of the
> foundation of our system of criminal justice.  A particular practice
> – here the impaneling of an anonymous jury – and its impact on the
> presumption of innocence must therefore receive close judicial
> scrutiny and be evaluated in the light of reason, principle and
> common sense.

757 F.2d at 1363, *citing Estelle v. Williams*, 425 U.S. 501, 504 (1976).[5]

In *United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994), the Court summarized the risks of

an anonymous jury as follows:

> [u]nquestionably, the empanelment of an anonymous jury is a
> *drastic measure*, one which should be undertaken only in *limited
> and carefully delineated circumstances*.  An anonymous jury raises

---

[4]  In *Bellomo*, the "substantial evidence" of the defendants' obstruction of justice included
violent intimidation of witnesses and suspected cooperating witnesses.  954 F. Supp. at 654-56.

[5]  In *Thomas*, 757 F.2d at 1362-64, an organized crime case, the defendant was charged
with a conspiracy to murder a government witness, and the Indictment "accused defendants of
attempts to interfere with the judicial process by murdering government witnesses."  *Id*.  In fact,
affidavits asserted that counsel for the defendants' drug ring had agreed to pay $1 million for the
murder of government witness, Nicky Barnes, and that the defendant had bribed a juror at a prior
trial resulting in a hung jury.  *Id*.

> the specter that the defendant is a dangerous person from whom the
> jurors must be protected, thereby implicating the defendant's
> constitutional right to a presumption of innocence.

*Ross*, 33 F.3d at 1519 (emphasis added); *see also*, *Commonwealth v. Angiulo*, 615 N.E.2d 155,

172 (Mass. 1993) ("empanelment of an anonymous jury triggers due process scrutiny because the

practice is likely to taint the jurors' opinion of the defendant, thereby burdening the presumption

of innocence").

Underlying the need for a strong showing of the necessity for an anonymous jury before

surmounting the extraordinary judicial hesitancy to proceed in that fashion is the burden that

practice imposes on two important interests:  the presumption of innocence and the defendant's

interest in conducting a meaningful *voir dire*.

As the Second Circuit explained in *United States v. Amuso*, 21 F.3d 1251 (2d Cir. 1994),

in considering a motion for an anonymous jury, a court

> must balance the defendant's interest in conducting a meaningful
> *voir dire* and in maintaining the presumption of innocence against
> the jury's interest in remaining free from real or threatened
> violence and the public interest in having the jury render a fair and
> impartial verdict.

*Id.*, at 1264.[6]

Courts do not even reach the balancing test, however, without a credible and convincing

predicate demonstration that there exists, in fact, "strong reason to believe the jury needs

protection . . . ." defined as a finding that there is "a serious threat to jury safety . . . ."  *Thomas,*

---

[6]  In *Amuso*, "[t]he crimes charged . . . showed that Amuso was willing to interfere with
the judicial process by murdering government witnesses and, as head of the Luchese crime
family, it was certainly reasonable to expect that Amuso had the means to interfere with jurors if
he so desired."  21 F.3d at 1264-65.

6

*supra*, 757 F.2d at 1364-65, *quoted with approval* in *Amuso*, 21 F.3d at 1264; *see also Wong*, 40 F.3d at 1376 ("[e]mpaneling an anonymous jury undoubtedly has serious implications for a defendant's interest in effectively conducting *voir dire* and in maintaining the presumption of innocence").[7]

In determining whether the government has met its burden, the courts have identified three factors to consider:

    (1)    the nature and seriousness of the charges, and the particular defendant;

    (2)    any attempts or allegations against the defendant pertaining to a corruption of the judicial process;  and

    (3)    the potential impact of publicity relating to the trial.

*See United States v. Tomero*, 486 F. Supp. 320, 322 (S.D.N.Y. 2007).

Here, all three factors overwhelmingly favor a conventional jury, and not an anonymous jury. Constitution.

**B.**    ***The Government Has Not Presented Sufficient Allegations Regarding Juror Security With Respect to Mr. Hausa or This Case***

    **1.**    ***There Are Not Any Allegations or Evidence of Attempts to Obstruct Justice***

In assessing whether a jury truly "needs protection," and that, therefore, an anonymous jury is "genuinely called for," the Second Circuit has emphasized that, "[a]n obstruction of justice charge, particularly one involving jury-tampering, has always been a crucial factor in our

---

[7] In *Wong*, 40 F.3d at 1376-77, the Second Circuit held that "[t]he record in this case amply supports the district court's conclusion that the jury needed protection," stating that "the government's pretrial proffer on this issue, borne out by evidence at trial, indicated that the [defendant's gang] had an extensive history of interfering with the judicial process," including the murder of prior witnesses and attempts to kill future witnesses.

decisions regarding anonymous juries." *Vario*, 943 F.2d at 240; *see also United States v. Tutino*, 883 F.2d 1125, 1132-33 (2d Cir. 1989).[8]

Of course, no such allegation is present in this case, either in the charges themselves, or among the other vague allegations by the government. The record is reliably devoid of any allegations of jury-tampering or obstruction, since, as the government well knows, Mr. Hausa has not had any contact with the outside world for years; specifically, he does not make phone calls, does not have access to any email system, and has not had a single visitor at MCC other than his attorneys – at a time when he agreed to such visits.

Rather than focusing on the critical issues enunciated by appellate courts around the country, the government instead cites certain factors that are utterly irrelevant, such as the defendant's demeanor during interrogations. *See* Government's Memo of Law, at 11. Nor is mere alleged "contempt" for the authority of the Court the equivalent of a danger to jurors. *Id.*, at 3.

It has not pointed to any statements by *anyone anywhere*, via any medium, with respect to this case that would implicate juror security. Rather, it relies on generalized allegations about *al Qaeda*, and alleged statements by Mr. Hausa. In fact, the government's catalogue of Mr. Hausa's alleged custodial statements suggest its belief that even for Mr. Hausa, the jury is merely a formality, and would not be in danger of influence by what the government characterizes as a defiant defendant who acknowledges his criminal responsibility.

---

[8]  In *Vario*, an organized crime case in the Eastern District of New York, a co-conspirator had engaged in jury tampering as a method of further the racketeering conspiracy. 943 F.2d at 239. Similarly, in *Tutino*, an organized crime case, the defendant had attempted to tamper with a jury in a prior trial. 883 F.2d at 1132-33.

Also, Mr. Hausa was in jail in Italy for an extended period without any problems, and has been in custody here in the U.S. for years without any violent conduct. He does not have any means of contacting anyone beyond his attorneys; no one has contacted his attorneys on his behalf, or deposited money in his commissary account, or attempted to visit or assist him in any fashion. He is alone, and no one but his attorneys and the government has exhibited any interest in him or his fate.

Regarding the general threats the government claims Mr. Hausa has made against prosecutors, clearly the government does not regard them as genuine, as the government's motion yesterday for a "force order," over the defendant's and defense counsel's objection, establishes. Nor do such generic threats translate at all into a danger to the jury without something more specific and directed.

### 2. *The Mere Invocation of* **al Qaeda** *Is Not Sufficient to Justify an Anonymous Jury In This Case*

As the Second Circuit cautioned in *Vario*, "[t]he invocation of words such as 'organized crime,' 'mob,' and 'the Mafia,' unless there is something more, does not warrant an anonymous jury." *Vario*, 943 F.2d at 241. As the Court in *Vario* elaborated,

> [b]efore a district judge may rely on the organized crime connection of a defendant as a factor in the question of anonymous juries, he must make a determination that the connection has some direct relevance to the question of juror fears or safety in the trial at hand beyond the innuendo that this connection conjures up.

*Id*.

That same standard applies here with respect to the government's omnibus invocation of terrorism and *al Qaeda*. *See* Government's Memo of Law, at 18. In *Mostafa*, the Court responded to the same argument by the government as follows: "[s]imilarly, the mere

incantation of words such as 'terrorist, 'terrorism,' 'al Qaeda,' 'Bin Laden,' and '9/11' is insufficient to require an anonymous jury." 7 F. Supp.3d at 337, *citing Vario*, 943 F.2d at 241 and *Tutino*, 883 F.2d at 1132-33.

Similarly, the government's claim that mere affiliation with or even membership in *al Qaeda* is a sufficient basis for an anonymous jury is simply a transparent proxy for an argument already rejected by the Second Circuit as a justification for an anonymous jury. *Id*. *See also* Government's Memo of Law, at 18.

Nor is reference to Boko Haram, an organization active only in Africa and without any logistical connection to the U.S., or this particular jurisdiction or jurors, availing. *See* Government's Memo of Law, at 18. Also, here, any violence alleged in this case occurred nearly 13 years ago and a half a world away. Thus, the government's resort to a generalized discourse about *al Qaeda* and/or other organizations cannot justify an anonymous jury; moreover, its public filing did more to infect the jury pool and obstruct the defendant's right to a fair trial than he could ever do in his current state of complete isolation.

In addition, the government's contrived claim that an anonymous jury would *help* Mr. Hausa – *see* Government's Memo of Law, at 17 – is simply a contorted argument by which the jurors' generalized fear of *al Qaeda* and terrorism would be leveraged by connecting it directly to a fear of Mr. Hausa (through juror anonymity).

In addition, there are multiple examples of cases with direct connections to *al Qaeda* (or other violent terrorist organizations) *in the United States* in which anonymous juries were *not* employed. For example, in

- *United States v. Sabir*, 05 Cr. 673 (LAP) (S.D.N.Y.), the defendant, a U.S. citizen

recruited *in the U.S.*,  swore *bayat* to *al Qaeda*;

- *United States v. Paracha*, 03 Cr. 1197 (SHS) (S.D.N.Y.), the defendant was alleged to have assisted *al Qaeda* operatives – including Khalid Sheikh Mohamed, an architect of the 9/11 plot and senior *al Qaeda* operative – as part of a plot to sneak *al Qaeda* personnel into the U.S. for purposes of a plot to detonate explosives at gas stations;  and

- *United States v. Ressam*, 99 Cr. 666 (JCC) (W.D. Wash.), the defendant was alleged to have been the principal protagonist in *al Qaeda*'s plot to detonate explosives at Los Angeles International Airport in conjunction with the millennium.

### 3.    *The Offenses Alleged In This Case Are Insufficient to Justify An Anonymous Jury*

Nor are the allegations in this case sufficient to warrant an anonymous jury.  Mr. Hausa has never been previously charged, much less convicted, of any violence, and to find him a threat to jurors would surely put the cart before the horse in this case.  Again, even those allegations are quite remote in time and place.

Moreover, charges of violence by themselves cannot suffice;  otherwise, an entire category of cases – those charging violence – that are *not* tried before anonymous juries, but which perhaps have more likelihood for juror security measures, would be encompassed within those for which an anonymous jury would be appropriate.  *See Mostafa*, 7 F. Supp.3d at 336-38.

Indeed, this District's docket is replete with cases charging violence, many involving homicides and other serious violence, that do not resort to anonymous juries – even though the defendants are local, have local contacts, and have operated illegally and violently through

11

organizations that still exist in the communities they terrorized.  *See Mostafa*, 7 F. Supp.3d at 336 ("[t]he nature of the charges against a defendant does not, *ipso facto,* require such empanelment.  Indeed, to so find would run counter to the cloak of innocence that surrounds any defendant on trial in this country").[9]

Those cases in which an anonymous jury has been utilized are rare and special in terms of their threat to the administration of justice, *see* **ante**, at 4-7, in tandem with their specific and local violent conduct.  For example, in *United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995), an organized crime case, the government supported its request for an anonymous jury with "a variety of proffers," including evidence regarding a financial incentive and violent threat geared toward preventing a potential witness from testifying adversely to the defendants, and prior attempts to influence a witness.

In *Mostafa*, as here, there were not specific allegations related to attempted or even contemplated interference with the jury.  7 F. Supp.3d at 337, *citing Vario*, 943 F.2d at 236 and *Bellomo*, 954 F. Supp. at 654.  Also mirroring the situation here, the defendant in *Mostafa* was charged with conspiracy to commit violent offenses overseas a decade earlier (a kidnaping in Yemen that resulted in the death of four hostages, and the wounding of others), but was *also* charged with arranging an armed terrorist training camp *in the United States*.

Nevertheless, the Court in *Mostafa* recognized that

> [n]otably, none of the charges against this defendant involves obstruction of justice or otherwise impeding the judicial process. This case presents a fact pattern that has only two of the elements the Second Circuit requires:  serious charges and significant media

---

[9]  Counsel for Mr. Hausa have been and continue to be involved in such cases, the majority of which have not involved even a request for an anonymous jury.

attention.  Those elements do not, however, distinguish this case
from any number of cases tried in this district each year.

7 F. Supp.3d at 338.

Similarly, *United States v. Paccione*, 949 F.2d 1183, 1192-93 (2d Cir. 1991), affirmations submitted to the Court set forth concerns that the defendants "might seek to influence the outcome of the prosecution by improper means" based on organized crime ties, threats, and an anonymous call to a government witness instructing the witness that he would be safe as long as he "remembered nothing."  *See also United States v. Rahman*, 93 Cr. 181 (MBM) (terrorism case in which defendant was charged not only with conspiracy to wage war on the U.S., bombing and firearms related offenses, but also with charges in connection with an attempted murder of a federal officer and assault on a federal officer); *United States v. Stewart*, 590 F.3d 93, 125 (2d Cir. 2009) (in terrorism case, the "charges against [defendants] were in significant part about their alleged corruption of the judicial process").

Also as instructive are the cases in which there are reported decisions in which courts have *denied* government requests for an anonymous jury.  *See United States v. Millan-Colon*, 834 F.Supp. 78 (S.D.N.Y. 1993) (denying application for anonymous jury);  *United States v. Melendez*, 743 F.Supp. 134, 135 (E.D.N.Y. 1990) (denying government the "drastic remedy of an anonymous jury");  *United States v. Coonan*, 664 F.Supp. 861, 862 (S.D.N.Y. 1987) (denying request for anonymous jury in the absence of evidence that the defendants – notwithstanding the fact they were charged with "predicate acts including murder, attempted murder, kidnapping, loansharking, extortion, and narcotics trafficking as part of a racketeering enterprise known as the Westies" – were likely to interfere with the judicial process).

Indeed, *Coonan* is most illustrative.  The Westies terrorized an entire swath of Manhattan's West Side for years, yet the racketeering prosecution of its members in the Southern District was deemed not to merit an anonymous jury.  *See* English, T.J., *The Westies:  Inside New York's Irish Mob* (St. Martin's Paperbacks:  1991).[10]

Conversely, there are no reported instances of threats, intimidation, or violence of jurors in terrorism trials in the U.S.  There have been many such trials, including the following in the Southern District of New York and other districts (as well as those listed **ante**, at 10-11):

- *United States v. Cromitie*, 09 Cr. 558 (CM) (S.D.N.Y.), alleging a  plot to shoot down airplanes and bomb synagogues in the New York area;

---

[10]  The Publishers Weekly review of *The Westies* posted on amazon.com reads as follows:

> Hell's Kitchen, a section of Manhattan west of Eighth Avenue between 34th and 59th Streets infamous for poverty and gang-related crime which dates back to the 19th century, was taken over in the late 1960s by the "Westies" mob.  The name – used by the press and the police, not by the mobsters themselves – designated a group of ruthless and vicious hoodlums, led by Jimmy Coonan and Francis (Mickey) Featherstone, who cut up the bodies of victims to dispose of them more readily.  Once in power, Coonan caused considerable grumbling in the mostly Irish gang when he allied his men with the Gambino crime family.  Next, Coonan arranged to have rival Featherstone charged with a murder; found guilty, he became a witness against the Westies, joined by other gang turncoats.  In early 1988 Coonan and several of his henchmen were convicted of assorted crimes and imprisoned. English, who covered the trial for the Irish Voice, ably traces the Westies' rise and fall.

Available at <http://www.amazon.com/gp/product/0312924291?ie=UTF8&tag=httpwwwgoodco-20&linkCode=as2&camp=1789&creative=9325&creativeASIN=0312924291&SubscriptionId=1MGPYB6YW3HWK55XCGG2>.

- *United States v. Siddiqui*, 08 Cr. 826 (RMB) (S.D.N.Y.), alleging the attempted murder of United States soldiers in Afghanistan;

- *United States v. Sabir*, 05 Cr. 673 (LAP) (S.D.N.Y.), alleging offering medical assistance to injured *al Qaeda* fighters in Iraq;

- *United States v. Siraj*, 05 Cr. 104 (NG) (E.D.N.Y.), alleging an attempted bombing of the Herald Square subway station.

- *United States v. Aref*, 2004 Cr. 402 (TJM) (N.D.N.Y.), alleging a conspiracy to provide  missiles for an attack aimed at a Pakistani diplomat;

- *United States v. Mehanna*, 09 Cr. 17 (GAO) (D. Mass.), alleging material support for terrorism and conspiring to kill in a foreign country (including training at an overseas terrorism camp);

- *United States v. Aldawsari*, 11 Cr. 15 (SRC) (N.D.Texas), alleging gathering materials to construct bombs;  and

- *United States v. Mohamud*, 10 Cr. 475 (GMK) (D.Ore.), alleging a plan to bomb a parade in Portland, Oregon.

- *United States v. Holy Land Foundation*, 04 Cr. 240 (N.D. Tex.), alleging material support in the form of millions of dollars in aid to organizations allegedly affiliated with *Hamas*.  That case was tried twice (with the first trial resulting in acquittals and a deadlocked jury);

- *United States v. Al-Hussayen*, 03 Cr. 48 (EJL) (D. Idaho), alleging material support to *Hamas* and terrorists in Chechnya via fundraising and recruitment;

15

- *United States v. Moalin*, 10 Cr. 4246 (JTM) (S.D. Cal.), alleging material support to *al Shabaab* in the form of money transferred to Somalia;

- *United States v. Abu Ali*, 05 Cr. 53 (E.D. Va.), alleging participation in a Saudi *al Qaeda* affiliate's plots against the U.S., including presidential assassination and attacking nuclear power plants.

Thus, the offenses charged herein do not justify an anonymous jury.

### 4.    *Publicity Related to This Case Is Insufficient to Justify An Anonymous Jury*

High profile cases, both civil and criminal, abound in the Southern and Eastern Districts of New York.  Yet the overwhelming majority do not involve even requests for anonymous juries.  In fact, neither former New York State Assembly Speaker Sheldon Silver nor State Senate Majority Leader Dean Skelos were tried before an anonymous jury, and the widespread publicity in those cases, which each probably generated more articles, reports, and blog posts *per day* than this case has since Mr. Hausa was brought to the U.S., did not engender any concern from the government in that respect.  The same was true for the high-profile trial of Pedro Espada in this District.

No doubt many jurors are aware of the distinction.  They know Martha Stewart did not have an anonymous jury, or Sheldon Silver or Dean Skelos or Pedro Espada.  They know anonymous juries are reserved for those cases – regardless of the media attention they generate – in which the defendant presents a danger to *them* as jurors.  *See also Mostafa*, 7 F. Supp.3d at 337, *citing Vario*, 943 F.2d at 240 ("[t]he fact that a case may receive press attention – even a great deal of press attention – is itself insufficient to justify the impact on a defendant's trial that empanelling an anonymous jury may have").

16

**5.      *Transparently Unbelievable Instructions to Jury Will Not Alleviate the Prejudice to Mr. Hausa, But Will Simply Aggravate It***

In that context, transparently incredible (and inaccurate) instructions such as those proposed by the government merely reinforce the notion that the defendant is dangerous and his guilt is known (but hidden from the jury through the patently incredible instructions) and that the result should be a foregone conclusion.

Also, here, that train has already left the station, as the government filed its motion publicly, making its articulated concerns about the negative impact of publicity entirely disingenuous.  Moreover, its cynical professed concern that an anonymous jury would keep media from approaching the jury is belied by its own actions that deliberately stoke the media coverage and prejudice emanating therefrom.  *See* Government's Memo of Law, at 19-20.[11]

In addition, the instructions, and their obvious attempt to shield the jury from the genuine reason for the request for an anonymous jury, place a court's imprimatur on the charade, thereby aggravating the prejudice to Mr. Hausa.  An anonymous jury would recognize those instructions as the proverbial "wink" designed to provide some ostensibly legitimate rationale to conceal the obvious and genuine purpose.

The effect on Mr. Hausa's right to an effective *voir dire* process, and a fair trial, is as transparent as any attempted instruction that tries to fool a jury into believing that its anonymity

---

[11]  The government's public filing of its motion certainly transgresses the spirit, if not the letter as well, of various rules designed to preclude prejudicial publicity that any reasonable person would know would be disseminated publicly and prejudice a party.  *See, e.g.,* New York Rules of Professional Conduct, 3.6, 3.8 & 8.4(d);  Eastern District Local Criminal Rule 23.1. These rules apply directly or indirectly, *see* Rule 8.4(a), and here the obvious resort to the media not only prejudices Mr. Hausa through the preview of the entirety of the government's evidence (without any relevant purpose to the motion), but also renders ineffectual any attempt by the Court to provide the jury a non-prejudicial excuse for its anonymity.

is premised on publicity, and not the government's contention – and a court's at least tacit

agreement, instructions notwithstanding – that the defendant in a terrorism case is dangerous.

Again, in *Mostafa*, the Court recognized that such instructions would be ineffectual:

> [t]he presumption of innocence is the keystone of the process
> which [the defendant] is due.  Unless and until there is some basis
> to believe that "business as usual" is no longer appropriate, this
> Court will not vary from general practices.  Indeed, the Court is
> almost more concerned with the "other protective measures" that
> the Government requests than with the anonymous jury;  those
> measures serve to remind the jury each day as they arrive and as
> they leave that this trial requires special handling.  Whether the
> Court provides the jury with a "neutral" explanation may not
> eliminate that ongoing and repeated reminder.

7 F. Supp.3d at 338.

**6.**     ***Far Less Extreme Measures Can Be Adopted to Protect the Privacy of Juror***
        ***Information Without Prejudicing Mr. Hausa's Right to a Fair Trial***

As noted **ante**, far less extreme measures can be implemented to protect private juror

information.  In addition to a "key" to preserve the confidentiality of answers in the juror

questionnaire, *voir dire* can accommodate juror privacy interests through sidebars (or chambers

conferences) with individual jurors regarding delicate matters, and through sealing such portions

of the record for an indeterminate period.

These procedures can accomplish juror privacy protection without abandoning the

traditional jury selection process, and denying Mr. Hausa the right to an impartial jury and a fair

trial.  Indeed, they were utilized in *Mostafa* without incident, and without impairing the

defendant's rights.

Thus, as the Court concluded in *Mostafa*, here "[t]he Government has failed to present

any evidence or to make any proffer that this defendant or this case presents a situation in which

18

a jury faces real or threatened violence;  they have presented no basis to suggest that there is any

threat to juror safety, let alone a 'serious threat.'" 7 F. Supp.3d at 338.

Accordingly, it is respectfully submitted that the government has failed to meet the

requisite standard for such a drastic measure, and that its motion must consequently be denied.

### Conclusion

Accordingly, for all the reasons set forth above, it is respectfully submitted that the

government's motion for an anonymous and partially sequestered jury should be denied.

Dated: 29 April 2016
     New York, New York

                                 Respectfully submitted,

                                 /S/ Joshua L. Dratel
                                Joshua L. Dratel
                                Joshua L. Dratel, P.C.
                                29 Broadway
                                Suite 1412
                                New York, New York 10006
                                (212) 732-0707

                                David Stern
                                Rothman, Schneider, Soloway & Stern, LLP
                                100 Lafayette Street
                                Suite 501
                                New York, New York 10013
                                212-571-5500

                                Susan G. Kellman
                                25 Eighth Avenue
                                Brooklyn, New York 11217
                                718-783-8200

                                *Attorneys for Defendant*
                                *Ibrahim Suleiman Adnan Adam Harun*