1

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2

3    - - - - - - - - - - - -   X

4    UNITED STATES OF AMERICA,    :    12 CR 134

5                                 :

6        -against-                :

7                                      United States Courthouse
                                       Brooklyn, New York
8    ADNAN HAUSA,                 :

9                                      January 30, 2015
             Defendant.           :    4:00 o'clock p.m.
10

     - - - - - - - - - - - -   X
11

12              TRANSCRIPT OF CONFERENCE
          BEFORE THE HONORABLE BRIAN M. COGAN
13           UNITED STATES DISTRICT JUDGE

14

     APPEARANCES:
15

16   For the Government:        LORETTA E. LYNCH
                                United States Attorney
17                              BY: SHREVE ARIAIL
                                Assistant United States Attorney
18                              271 Cadman Plaza East
                                Brooklyn, New York
19

20   For the Defendant:        SUSAN KELLMAN, ESQ.

21

     Court Reporter:           Gene Rudolph
22                             225 Cadman Plaza East
                               Brooklyn, New York
23                             (718) 613-2538

24

     Proceedings recorded by mechanical stenography, transcript
25   produced by computer-aided transcription.

GR       OCR       CM       CRR       CSR

2

1          THE CLERK:  United States versus Adnan Hausa, docket
2   number 12 CR 134.
3          Counsel, please state your appearances, starting
4   with the government.
5          MR. ARIAIL:  Good afternoon, Your Honor.
6          Shreve Ariail from the United States.
7          THE COURT: .  Good afternoon.
8          MS. KELLMAN:  Good afternoon, Your Honor.
9          Susan Kellman for Mr. Hausa.
10          THE COURT:  Good afternoon.
11          Good afternoon, Mr. Hausa.
12          I will note that we have an interpreter.  Let's have
13   him sworn, please.
14          Stand, sir.
15          THE CLERK:  Please raise your right hand.
16          (The interpreter is affirmed.  His name is
17   Mohammed A. Shuaib.)
18          THE CLERK:  You may be seated.
19          THE COURT:  All right.  Status, please.
20          MR. ARIAIL:  Your Honor, I think at the last status
21   conference counsel indicated that he and she were going to
22   seek a culturally appropriate psychiatrist to potentially
23   review Mr. Harun in terms of his competence to add a different
24   perspective.
25          THE DEFENDANT:  Last time I say and I was taken

GR     OCR     CM     CRR     CSR

3

1    outside.  Before we start everything, if you want to start

2    everything, let us know.  I don't know why I am in this

3    courtroom.  The judge that is in front of me, he said he is

4    going to talk to him and from the Missouri Medical Center.

5            THE COURT:  I have the note.

6            THE DEFENDANT:  So I don't know why I am here now.

7            THE COURT:  Okay.  It will --

8            THE DEFENDANT:  And as soon as everything is done,

9    my lawyer for 28-month I didn't see the embassy.  I don't

10   understand anything.  You taking me here.

11           THE COURT:  Sir, I am going to need you to control

12   yourself and stop talking.  Your time to talk will come.  All

13   will be revealed.

14           THE DEFENDANT:  I don't accept.  I don't accept

15   anything --

16           THE COURT:  I am going to again ask the defendant to

17   stop interrupting the proceedings so that we can tell where we

18   are and what needs to be done next.

19           THE DEFENDANT:  I don't accept it.

20           THE COURT:  You don't have to accept it.  You just

21   need to be quiet.

22           THE DEFENDANT:  Because I don't have -- from the

23   military in Napoli, the pentagon did not answer me.  I sent

24   two letters to the pentagon and I didn't receive any answer.

25           THE COURT:  Mr. Harun, you are going to have to stop

4

1   interrupting these proceedings or you will be excluded from

2   them.

3           THE DEFENDANT:  I don't want to hear.  I don't want

4   to hear.

5           THE COURT:  Then you don't have to listen.  You have

6   to stay quiet.

7           All right.  Ms. Kellman, where did we get to?

8           MS. KELLMAN:  Your Honor, we have made considerable

9   efforts to try to find a native speaker who is a licensed

10  psychologist or even an unlicensed psychologist.

11          THE COURT:  I need to interrupt you because the

12  defendant has started doing what he did last time.

13          MS. KELLMAN:  Humming.

14          THE COURT:  Which is to hum in a loud enough voice

15  to disrupt the proceeding.

16          I have to tell you, Mr. Harun, we can do this

17  proceeding with you or without you.  But if you don't obey the

18  rules of the Court it will be without you.

19          THE DEFENDANT:  The protocol of my rights.

20          THE COURT:  I am going to ask you one more time to

21  stop making noise and to stop disrupting the proceeding or I

22  will exclude you.

23          THE DEFENDANT:  Human rights, human rights.

24          THE COURT:  All right.  The defendant declines to

25  stop interrupting these proceedings and we are therefore going

GR     OCR     CM     CRR     CSR

5

1    to exclude him from the courtroom.  We will set up an

2    alternative courtroom for him to watch the proceedings in and

3    we will take it from there.

4              We will reconvene in ten minutes.

5              Thank you.

6              (Recess taken.)

7              (After recess; the defendant not present.)

8              THE COURT:  Okay.  The defendant is next door with

9    the interpreter and he is watching these proceedings live and

10   with simultaneous translation.  Let's be sure to talk into the

11   mikes so the interpreter gets everything we are saying.

12             Okay.  You were saying, Ms. Kellman, about the quest

13   to find a culturally similar evaluator?

14             MS. KELLMAN:  We have not had any luck, Judge, in

15   our search for somebody who speaks Hausa.  I have had

16   conversations with people at the embassy and they have said

17   that they would make an effort to find someone for us.  We did

18   have more luck finding someone who speaks Arabic, but more

19   often than not our client has refused of recent date to speak

20   Arabic even though he understands it.

21             I still think it would be advantageous to have

22   somebody, even if they spoke Arabic, be someone from his

23   country.

24             So we really haven't -- it's not that we haven't

25   made the effort.  We have not come up with a winner as of yet.

GR     OCR     CM     CRR     CSR

6

1    I hesitate to suggest that we go forward because I think, as

2    we all see, we do have reports that say that he is competent

3    and I do think he has the ability to turn it on and turn it

4    off.  But there are diseases that allow you to do that as well

5    as willfulness and I don't feel competent to judge whether it

6    is willful or organic.

7           THE COURT:  Unfortunately, that job falls to me.

8    Let me ask you, what's the alternative at this point besides

9    going forward?

10          MS. KELLMAN:  The alternative would just be another

11   30 days to try to find someone and continue to try to find

12   someone.

13          THE COURT:  If you could tell me you thought it was

14   more likely than not that you will first be able to find

15   someone and you also think there is a reasonable chance that

16   your client will cooperate sufficiently with an evaluation, I

17   would do that; but it doesn't sound like that's the case.

18          MS. KELLMAN:  Even if the first -- if I could meet

19   the first bar, which is finding someone who fits the bill that

20   we have laid out, in terms of cooperation, I think cooperation

21   has been seriously difficult, obviously, on the one hand.  On

22   the other hand, he might respond to somebody from his country

23   or someone who speaks his language.  On the other hand, we did

24   produce not just someone from the consul general's office but

25   the actual ambassador of his country, which surprised all of

1  us when he walked into the courthouse and had a card that said

2  he was the ambassador of the country, the nation of Niger.

3  But he then very quickly after cooperating with the ambassador

4  for several hours determined that he was just a plant from the

5  CIA and then --

6          THE COURT:  That's what he said?

7          MS. KELLMAN:  Yes.

8          Now he continued, even today, I don't know if the

9  Court heard him, to say he has a right to meet with his

10 ambassador and he's never been able to do that.  That's one of

11 the lines he's adopted, that he has not been able to do that

12 because the person that we brought in was a shill.

13         MR. ARIAIL:  I can confirm, it was ambassador of

14 Niger, Your Honor.

15         THE COURT:  Yes.  I have no doubt, this was not one

16 of the scams that come out of that continent.

17         All right.  I guess, Ms. Kellman, it falls on you in

18 the initial instance to either ask me for more time or to tell

19 me you don't think more time will help you.

20         MS. KELLMAN:  Judge, I think since we are -- like I

21 said, I think you nailed the issue, which is, one, can I find

22 someone -- I have confidence that eventually I will find

23 someone and by eventually I am getting closer and closer to

24 either knowing whether someone exists or not.  But on the

25 second issue of cooperation, I just have no way of knowing

1   whether or not there is any reasonable -- any reason to

2   suspect that he will cooperate.  Although from the reports

3   from Springfield you could say that he basically has at least

4   said, I don't know why I am here talking to you.  There is

5   nothing wrong with me.  So he can be coherent when he chooses

6   to be and, again -- -- again, if his inclination to not be

7   cooperative is organic, then maybe he needs medication.  On

8   the other hand, if it's just willful, as I think many

9   professionals have --

10          THE COURT:  Ms. Kellman, are you asking me for more

11  time?

12          MS. KELLMAN:  I suppose I am, Judge.

13          I don't know that we are in a great hurry.  I think

14  these are important issues.  I think that -- I am thinking

15  also to the next step.  I have laid out two steps.  What's the

16  next step?  Assume for the moment I say let's forego all of

17  this.  Where do we go from there?  Do we go to a hearing on

18  his competence?  I don't know where I'd go with the hearing on

19  his competence because I have a number of reports, all of

20  which say that he can fake insanity.  You can't fake sanity.

21  Everybody seems to think that he is sufficiently lucid when he

22  wants to be, that he is competent to go forward.

23          I think one of the things that he really wants,

24  Judge, and I don't know how we do this -- of course, I think

25  we want do it until there is a declaration by the Court that

1   he is competent, is he really wants to represent himself.  I

2   wondered if it was sensible, since he doesn't answer the

3   Court's questions, and I don't know how the Court allows him

4   to have standby counsel and represent himself without making a

5   finding of competence first.  I wondered if it makes sense to

6   try to add a lawyer to the mix to see if he would cooperate

7   with someone else.  Although I really don't have any reason to

8   think that it's Mr. Stern and myself so much as it is just

9   cooperating with the tribunal that's not in the Hague.  I'm

10  sure if we were in the Hague there would be a reason he

11  couldn't do it in the Hague.

12          THE COURT:  What does the government want to do?

13          MR. ARIAIL:  Your Honor, as it stands, as I

14  indicated to the Court at the last status conference, the

15  government at this point thinks it is appropriate to move

16  forward with the case, at least as it relates to competence.

17  We have the reports of two doctors, both of whom are extremely

18  respected and credentialed, doctors who have opined that he is

19  in fact competent and I think it's worth looking at Doctor

20  Mills's report in particular because of his willingness to

21  cooperate with Doctor Mills in at least one setting.

22          THE COURT:  Before you argue the competence issue,

23  let's first determine if this is it.  Is this the hearing?

24          MR. ARIAIL:  In terms of the hearing, I think it

25  would be appropriate to have a hearing in which the government

1  simply moved for the Court to find him competent and presented

2  these two reports to Your Honor to consider.

3        THE COURT:  You don't intend to do that today?

4        MR. ARIAIL:  I can do that today.  I am happy to do

5  that today.  If Your Honor would like me to do that today, I

6  will do that today.

7        MS. KELLMAN:  That will help me make a decision,

8  which is that I think we should try another 30 days to try to

9  find someone.

10        THE COURT:  All right.  Here is what I am going to

11  do.

12        MS. KELLMAN:  I will say this also, Judge.  Judge

13  Mills saw my client very early on in these proceedings at a

14  time when there seemed to be a glitch in his behavior as

15  opposed --

16        THE COURT:  Judge?

17        MS. KELLMAN:  No, Doctor Mills.

18        THE COURT:  Doctor Mills.

19        MS. KELLMAN:  Did I say Judge Mills?

20        THE COURT:  Yes.

21        MS. KELLMAN:  Doctor Mills, so --

22        THE COURT:  I didn't know if you meant Judge Korman

23  or Doctor Mills.

24        MS. KELLMAN:  Saw him at a very early stage when we

25  just began after months of coherence to see a glitch in some

1    of his behavior.  So we thought it would be on the safe side

2    to bring in somebody to talk to him and at that point he

3    responded incredibly favorably and I don't know candidly if it

4    was because it was Doctor Mills and his expertise or because

5    he saw an interpreter who he hadn't seen for quite a long time

6    but someone who he felt very comfortable with, very relaxed

7    around.  He hugged him for some time.  It really was like

8    seeing him see family again and so I think that that also may

9    have contributed to it being early in the stage.  I think he's

10   a very different individual today from the individual that we

11   dealt with back then.  So I would like another opportunity to

12   see if we can find another person.

13            THE COURT:  All right.  Here is what I am going to

14   do. I am going to set March 5th as the competence hearing

15   date.  I will take whatever the government has to give me.  If

16   the defendant is able to obtain a report or an expert that he

17   wants to call, you will let me know that, Ms. Kellman, in

18   advance of the hearing.  Then you will make whatever discovery

19   is required in connection with that.  Then I will adjourn a

20   couple of weeks so that the government can respond.

21            But I think it's likely based on what I have seen

22   that the defendant is not going to get more cooperative so I

23   might as we will set the hearing date for the competence

24   hearing.  If it can't go forward because there is more

25   evidence and there is a need for more discovery, we will worry

1    about that then.

2              MS. KELLMAN:  I understand.

3              THE COURT:  Does that work for you?

4              MR. ARIAIL:  Yes, Your Honor.  That's totally

5    workable.

6              The only thing I would ask is that it not be the

7    fifth but it possible be early the following week because I

8    will be traveling for most of the rest of February.

9              THE COURT:  I was really referring to your schedule.

10   I wasn't referring if you liked it or not.

11             MS. KELLMAN:  I was going to let him off the hook

12   and say I -- it won't work for all of us.  I know how the

13   government doesn't like to say they are not ready.  We are all

14   traveling together.

15             MR. ARIAIL:  I am ready today.

16             THE COURT:  All right.  My deputy reminds me that

17   this interpreter that we are working with is the only one we

18   have.  So even if we are all available, we have to make sure

19   he is.

20             Melonie, why don't you go next door and check out

21   the whole week of -- which week are you all going?

22             MS. KELLMAN:  The week -- the second week of March.

23             MR. ARIAIL:  The ninth, the week of the ninth is the

24   week that I will be available.

25             THE COURT:  Okay.  Let's try for that Friday.  I

1    have a trial scheduled, although I don't know if it will

2    happen.  Let's try for Friday, at 2:15.  See if he can do,

3    that Friday, March 13th, at 2:15.

4              MR. ARIAIL:  2:15 or 2:30?

5              THE COURT:  2:15.

6              MR. ARIAIL:  Thank you.

7              THE COURT:  If it doesn't work for the interpreter,

8    we will think of something else.

9              MR. ARIAIL:  Just so I am clear, Your Honor, in

10   terms of filings, you would like the government to submit

11   something by that date or before that date?

12             THE COURT:  I have the reports.

13             MR. ARIAIL:  Okay.

14             THE COURT:  If what's going to happen is, in terms

15   of a formal hearing, the government is simply going to tender

16   them, then you can do that then.  If there is anything else

17   you want to tender that's been appropriately disclosed, you

18   may do that as well; and the same is true of the defendant.

19             MR. ARIAIL:  Certainly.

20             I think it's likely that we would also provide you

21   with additional 302s that the -- other materials that doctors

22   had themselves so you can at least take a look at the

23   underlying materials, some of which they rely on.

24             THE COURT:  I think that's good.  If there is going

25   to be materials like that, you should get it to me in advance

14

1   of the hearing and then you will again formally offer them

2   into the record at that point, so we will have a complete

3   record of the hearing that day.

4            MR. ARIAIL:  Certainly, Your Honor.

5            THE COURT:  As I said, the same is true of the

6   defendant.  If you have anything you want to give me, let me

7   know.  I assume at the very least there will be a proffer of

8   what testimony from this defendant would look like, which I

9   think I know what it would look like.  I could assume that if

10  you were going to call him at this hearing he would give

11  answers along the lines of which he has been giving while he

12  has been in court with me.  I will take that proffer into

13  account in determining his competence.

14            MR. ARIAIL:  Your Honor, also, just for the Court's

15  awareness, he made various statements to the psychiatrist,

16  some of which are memorialized, in which he declared he was

17  competent himself.  Those are other statements.  He's also had

18  some other court proceedings that may be worth looking at.  We

19  will add that to the mix.

20            THE COURT:  Please don't flood me with documents the

21  day before.

22            MR. ARIAIL:  I won't, Your Honor.

23            THE COURT:  Does that work?

24            THE CLERK:  No.

25            (Pause.)

1          THE COURT:  How about Thursday, at 2:15?

2          MR. ARIAIL:  That's fine for the government, Your

3    Honor.

4          MS. KELLMAN:  That works for me, Judge.

5          THE COURT:  All right.  I will exclude time until

6    then because we have the competence matter still pending and

7    we will see where we go on that date.

8          MR. ARIAIL:  Thank you, Your Honor.

9          THE COURT:  Anything else?

10          MS. KELLMAN:  Thank you, Judge.

11          THE COURT:  Okay.  Thanks.  Have a good weekend.

12          MR. ARIAIL:  Thank you.

13          MS. KELLMAN:  Thank you.

14          (Matter concludes.)

15

16

17

18

19

20

21

22

23

24

25

GR     OCR     CM     CRR     CSR