SA:MW/MJJ
F.#2011R01313

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -                                      12-CR-134 (BMC)

IBRAHIM SULEIMAN ADNAN ADAM
HARUN,
    also known as "Spin Ghul,"
    "Esbin Gol," "Isbungoul," "Abu
    Tamim," "Joseph Johnson" and
    "Mortala Mohamed Adam,"

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


## GOVERNMENT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ANONYMOUS AND PARTIALLY SEQUESTERED JURY


                                              ROBERT L. CAPERS
                                            UNITED STATES ATTORNEY
                                            Eastern District of New York
                                            271 Cadman Plaza East
                                            Brooklyn, New York 11201


Shreve Ariail
Melody Wells
Matthew Jacobs
Assistant U.S. Attorneys
      (Of Counsel)

The government respectfully submits this reply memorandum in further support of its motion for an anonymous, partially sequestered jury. As explained in the motion and below, an anonymous, partially sequestered jury is necessary to protect the jury and the integrity of the judicial process, and would not unfairly prejudice the defendant. Defense counsel's arguments to the contrary are meritless.

I. Empaneling an Anonymous, Partially Sequestered Jury Is Warranted

The Second Circuit has repeatedly upheld the use of anonymous, partially sequestered juries where there is "strong reason to believe that the jury needs protection" and where "reasonable precautions" have been taken "to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." United States v. Kaziu, 559 F. App'x 32, 37 (2d Cir. 2014); see also Government's Motion ("Mot.") at 14. "In determining whether there is a 'strong reason' to believe that the jury needs protection, courts should consider several factors, including whether (1) the charges against the defendants are serious, (2) there is a substantial potential threat of corruption to the judicial process, and (3) considerable media coverage of the trial is anticipated." (Mot. at 14 (quoting United States v. Al Fawwaz, 57 F. Supp. 3d. 307, 309 (S.D.N.Y. 2014) (citing United States v. Quinones, 511 F.3d 289, 296 (2d Cir. 2007)).) As described in the motion and below, all three factors are satisfied here.

A. The Charges Against the Defendant Are Serious

The first factor courts consider in determining whether the jury needs protection is the seriousness of the charges against the defendant. Remarkably, defense counsel does not acknowledge that the charges against the defendant—which include conspiracy to murder U.S. nationals, conspiracy to bomb U.S. government buildings and

2

providing material support to al-Qaeda—are serious.[1]  Instead, defense counsel argues that "charges of violence by themselves cannot suffice" to warrant empaneling an anonymous jury and that "the offenses alleged in this case are insufficient to justify an anonymous jury." (Br. at 11.)  Of course, the government never argues that charges of violence are alone sufficient to warrant empaneling an anonymous jury.  Rather, the government's position is that the seriousness of the charges is one of several factors the Court must consider, and that the seriousness of the charges in this case weighs heavily in favor of juror anonymity.

Defense counsel next claims that an anonymous jury is unwarranted because the defendant "has never been previously charged, much less convicted, of any violence, and to find him a threat to jurors would surely put the cart before the horse."  (Br. at 11.) Incidentally, the defendant *has* previously been charged with crimes of violence—specifically, crimes stemming from his assault of Italian law enforcement officers in June 2011.  But the existence of these prior charges is beside the point.  There is no criminal history litmus test when it comes to empaneling anonymous juries.  See, e.g., United States v. Pugh, --- F. Supp. 3d. ---, 2015 WL 8481877 (E.D.N.Y. Dec. 9, 2015) (granting motion for anonymous jury in terrorism-related trial of defendant without a criminal history).  Adopting such a test would lead to absurd results, namely the prohibition of anonymous juries in nearly all trials of first-time defendants.

---

[1] Defense counsel's refusal to concede that the charges against the defendant are serious is all the more remarkable given their prior positions on this issue.  In Kaziu, for example, the same defense counsel conceded that "[t]here is no question that the charges against Mr. Kaziu"—which, like the charges in this case, included conspiracy to commit murder in a foreign county and conspiracy to provide material support to terrorists—"are serious." 09-CR-660 (JG) Dkt. 169 (E.D.N.Y. June 13, 2011).

B.   The Judicial Process is at Risk

The second factor courts consider in determining whether there is a strong reason to believe that the jury needs protection is whether "there is a substantial potential threat of corruption to the judicial process." Pugh, 2015 WL 8481877, at *2 (quoting Al Fawwaz, 57 F. Supp. 3d at 309). The Second Circuit has explained that the protection of jurors is vital to the proper functioning of the federal criminal justice system:

> As a practical matter, we cannot expect jurors to "take their chances" on what might happen to them as a result of a guilty verdict. Obviously, explicit threats to jurors or their families or even a general fear of retaliation could well affect the jury's ability to render a fair and impartial verdict. Justice requires that when a serious threat to juror safety reasonably is found to exist, precautionary measures must be taken.

United States v. Thomas, 757 F.2d 1359, 1364 (2d Cir. 1985); see also United States v. Amuso, 21 F.3d 1251, 1264 (2d Cir. 1994).

In United States v. Barnes, 604 F.2d 121, 140-41 (2d Cir. 1979), the Second Circuit asked "If a juror feels that he and his family may be subjected to violence or death at the hands of a defendant or his friends, how can his judgment be as free and impartial as the Constitution requires?" The court then immediately answered its question as follows: "If the anonymous juror feels less pressure as a result of anonymity, this is as it should be a factor contributing to his impartiality." Id. (internal citation and quotation marks omitted); see also United States v. Muyet, 945 F. Supp. 2d 586, 591 (S.D.N.Y. 1996) (same).

Defense counsel primarily argues that the "mere invocation of al-Qaeda is not sufficient to justify an anonymous jury in this case." (Br. at 8). This argument fails because the government does not merely invoke al-Qaeda. To the contrary, the government proffered detailed and particularized facts regarding the defendant's participation in al-Qaeda,

4

including his role in the killing of U.S. soldiers, his efforts to bomb the U.S. diplomatic facilities in Nigeria and his extensive contacts with senior al-Qaeda officials.

At trial, every juror will know that the terrorist organization the defendant belongs to and fought for was responsible for the September 11, 2001 attacks on the United States. Many will know that al-Qaeda operatives also carried out the attacks on the U.S. embassies in Kenya and Tanzania—attacks the defendant sought to repeat in Nigeria. Further, every juror will likely know that al-Qaeda, al-Qaeda-linked terrorist groups and other Islamist extremist organizations continue to operate in the United States and around the world. Given these realities, it would be natural for jurors to fear that sitting in judgment of an al-Qaeda jihadist might lead to violent retaliation by the defendant's sympathizers, fellow members of al-Qaeda or members of other Islamist extremist organizations. See United States v. Stewart, 590 F.3d 93, 125 (2d Cir. 2009) (granting motion for anonymous jury, in part, because of "the reasonable likelihood that the pervasive issue of terrorism would raise in the jurors' minds a fear for their individual safety"); see also Thomas, 757 F.2d at 1364 (noting that "even a general fear of retaliation could well effect the jury's ability to render a fair and impartial verdict"). Indeed, even defense counsel appears to concede that there exists among the public a fear of terrorism. (Br. at 2 (describing the "public's fear of terrorism").)

Defense counsel also argues that an anonymous jury is not warranted because "[t]he record is reliably devoid of any allegations of jury-tampering or obstruction, since, as the government well knows, Mr. Hausa has not had any contact with the outside world for years." (Br. at 8.) But the defendant's own actions have more than established "a demonstrable history or likelihood of obstruction of justice." Pugh, 2015 WL 8481877, at *3

5

(quoting United States v. Vario, 943 F.2d 236, 241 (2d Cir. 1991)). Issuing death threats to the prosecutors assigned to his case and other Court personnel is just one of the ways the defendant has obstructed the judicial process. The defendant has also been openly hostile during Court proceedings. For example, he has repeatedly demanded to be tried in an "international" or "military" court, and when he was advised by Judge Korman that the District Court lacked the authority to transfer him to another tribunal, the defendant lashed out, stating "Fuck you, Judge. Judge, you bad [indiscernible]." (Mot. at 13 (citing June 28, 2013 Transcript at 19).)[2] "[C]ourts have found that an anonymous jury may be needed where," as here, "a defendant's conduct demonstrates disrespect for the judicial process." Pugh, 2015 WL 8481877, at *5. Further, the defendant's contemptuous behavior and "lack of respect for the judicial process suggests there is a serious need to protect the jury." United States v. Ashburn, 13-CR-303 (NGG), 2014 WL 5800280, at *8 (E.D.N.Y. Nov. 7, 2014). It is hard to imagine behavior more obstructive or corruptive of the judicial process than threats by a defendant to kill those who participate in his trial.

The evidence at trial will show that killing Americans—whether soldiers on a battlefield or civilians in a government building—has been a driving force in the defendant's life for many years. By all accounts—including his own—the defendant remains devoted to this goal today. Indeed, during a court appearance in mid-2013, the defendant openly

---

[2] Defense counsel also claims that an anonymous jury is not necessary because there are no allegations of jury tampering. (Br. at 8.) Of course there are no allegations of jury tampering. Because the defendant has never previously been tried by a jury and because the jury in this case has not yet been empaneled, it would be remarkable indeed if the defendant had already managed to engage in jury tampering.

declared: "I am a warrior and the war is not over. . . . Our terrorism is not over. . . . I am still in battle." (May 3, 2013 Transcript at 8-9.)

Defense counsel tries to minimize the significance of the defendant's threats by claiming that "clearly the government does not regard them as genuine, as the government's motion . . . for a 'force order,' over the defendant's and defense counsel's objective, establishes." (Br. at 9.) This argument makes no sense. The government's request that the defendant appear for conferences in his own trial in no way establishes that the government does not believe that defendant's death threats are genuine.

Defense counsel then claims that "such generic threats [do not] translate at all into a danger to the jury without something more specific and directed." (Br. at 9.) Of course, one purpose of the government's request for juror anonymity is to prevent the defendant from obtaining the personal information about jurors that would allow him or others to make such specific and direct threats. The defense also claims that the defendant presents less of a risk to the jury because he has repeatedly acknowledged his criminal responsibility. (Br. at 8.) But there is nothing to suggest that the defendant's pride in his prior crimes makes him less likely to threaten individuals associated with his trial or corrupt the judicial process.

Defense counsel does little, if anything, to distinguish the numerous cases cited in the motion in which courts have granted motions for anonymous juries. Instead, the defense repeatedly cites United States v. Mostafa, 7 F. Supp. 3d 334, 337 (S.D.N.Y. 2014), a terrorism-related case in which the court declined to empanel an anonymous jury. Mostafa is distinguishable from this case for at least two reasons. First, the defendant in Mostafa had previously been tried in the United Kingdom for the same conduct without an anonymous

7

jury and was convicted without incident. Indeed, the court in Mostafa based its decision, in part, on the fact that there was "no harassment of jurors and no security incidents with respect to witnesses" in the prior United Kingdom trial. Mostafa, 7 F. Supp. 3d at 336; see also id. at 338 (denying anonymous jury motion "[i]n light of the particular facts . . . including that the defendant has stood trial without an anonymous jury and without incident previously and that the Government has presented no new facts."). Cf United States v. Al Fawwaz, 57 F. Supp. 3d at 310 (granting anonymous jury motion and declining to follow Mostafa, in part, because "Mostafa had been tried and convicted of charges without incident before a non-anonymous jury").

Second, the charges in this case—which include conspiring to kill U.S. nationals and conspiring to bomb U.S. government facilities—are more serious than the hostage-taking and material support charges in Mostafa. See Al Fawwaz, 57 F. Supp. 3d at 310 ("while the charges against Mostafa were serious—hostage taking, conspiracy to provide and conceal material support and resources to terrorists, and providing and concealing such support—he was not charged with the far more serious offenses in this case of conspiring to kill United States nationals and to murder internationally protected persons"); see also Asburn, 2014 WL 5800280, at *15 (granting anonymous jury motion and distinguishing Mostafa, in part, because "the charges in *Mostafa* [are] less serious than charges involving conspiracy to commit murder, which every defendant in this case is alleged to have committed"). Like the defendants in Al Fawwaz and Asburn, the defendant is this case is charged with the more serious crime of conspiracy to commit murder.

Notably, the courts that have cited Mostafa to date have not only declined to follow it, but have also intimated that they might have reached the opposite decision given

8

identical facts. In Al Fawwaz, for example, after noting that "[a]nonymous juries have been empaneled in trials involving alleged terrorism offenses in the district, almost without exception," Judge Kaplan stated that

> it is important to bear in mind that the ultimate "decision whether or not to empanel an anonymous jury is left to the district court's discretion." . . . Thus, even were this case identical to *Mostafa* in the pertinent respects, and as we have seen it is not, it would be entirely appropriate for this Court to weigh the considerations differently and to reach a different conclusion as to the appropriateness of an anonymous jury.

57 F. Supp. 3d at 310 (quoting United States v. Paccione, 949 F.2d 1183, 1192 (2d Cir. 1991); see also United States v. Ahmed, 12-CR-661 (SLT), 2014 WL 6983438, at *3 (E.D.N.Y. Dec. 10, 2014) (same). Likewise, in Ashburn, the court stated that

> ultimately, it is important to bear in mind that the "decision whether or not to empanel an anonymous jury is left to the district court's discretion." As a result, even if this case were "identical to *Mostafa* in the pertinent respects, and as we have seen it is not, it would be entirely appropriate for this Court to weigh the considerations differently and to reach a different conclusion as to the appropriateness of an anonymous jury."

2014 WL 5800280, at *15 (quoting Al Fawwaz, 57 F. Supp. 3d at 310).

    C.    <u>The Defendant's Trial is Likely to Generate Substantial Publicity</u>

The third factor courts consider in determining whether there is a strong reason to believe that the jury needs protection is whether "considerable media coverage of the trial is anticipated." (Mot. at 14 (quoting Al Fawwaz, 57 F. Supp. 3d at 309) (citing Quinones, 511 F.3d at 296)).) As catalogued in the government's motion, media from around the country (and the world)—including all major American networks and all major New York area newspapers—reported on the unsealing of the defendant's indictment in 2012. Based on this publicity, it is reasonable to conclude that the trial itself will generate substantial media

9

coverage. See Ashburn, 2014 WL 5800280, at *12. ("Given the numerous press reports concerning pre-trial matters, the court can reasonably anticipate that media attention is likely to be substantial during the trial itself.") Accordingly, this factor favors empaneling an anonymous jury.

Defense counsel does not expressly dispute that media coverage of the defendant's trial is likely to be substantial. Instead, the defense obliquely suggests that an anonymous jury is not appropriate in this case because the cases of Sheldon Silver, Dean Skelos, Martha Stewart and Pedro Espada—which were even more highly publicized—"did not engender any concern from the government in that respect." (Br. at 16.) For obvious reasons, the government's concerns about potential violence to jurors in the cases of those white collar defendants differ from its concerns regarding juror safety in the defendant's trial. (See Mot. at 1-13.)

The defense also criticizes the government for generating additional media coverage through the filing of this motion. This argument misses the point. There has been substantial media coverage in this case ever since the unsealing of the indictment, and it is reasonable to expect that press interest will remain at least as high during the course of a public trial. Furthermore, the government anticipates that both parties will file many documents with the Court in advance of trial. While it will almost certainly be appropriate to file certain of these materials under seal, it would not be proper or practical to litigate all fact-intensive pretrial matters outside the public view.

II. An Anonymous, Partially Sequestered Jury Will Not Prejudice the Defendant

As noted above, courts empaneling anonymous juries must take reasonable precautions "to minimize any prejudicial effects on the defendant and to ensure that his

10

fundamental rights are protected." Kaziu, 559 F. App'x at 37. The Second Circuit has held that an anonymous jury does not infringe a defendant's rights provided that (1) the jurors are given "a plausible and nonprejudicial reason for not disclosing their identities"; and (2) "the court conducts a careful *voir dire* designed to uncover any bias as to issues or the defendants." United States v. Aulicino, 44 F.3d 1102, 1106 (2d Cir. 1995). Because both conditions can be satisfied here, empaneling an anonymous jury will not infringe the defendant's rights.

In keeping with Second Circuit practice, the Court can eliminate any potential prejudice to the defendant by issuing an instruction informing the jury in a neutral manner that anonymity is necessary to protect them from the media, and that selection of anonymous juries is not an unusual procedure. See, e.g., Kaziu, 559 F. App'x at 38 ("the district court told jurors that their identities were being hidden only because of the extensive media coverage and did not implicate Kaziu's dangerousness").

Defense counsel's claim that such an instruction would be "transparently incredible (and inaccurate)" (Br. at 17) wholly ignores the fact that the Second Circuit has approved this very instruction in numerous cases involving anonymous juries.[3] Notably,

---

[3] See, e.g., United States v. Gotti, 459 F.3d 296, 345 (2d Cir. 2006) (upholding use of anonymous jury and finding that prejudice was avoided by "instruct[ing] the jury that the special precautions had been implemented to protect them from the inquiring media"); United States v. Thai, 29 F.3d 785, 801 (2d Cir. 1994) ("In order to provide a nonprejudicial reason for maintaining anonymity, the introduction to the [jury] questionnaire stated, with approval of the parties, that '[s]electing an anonymous jury is not an unusual practice and has been followed in many cases in the Federal Court. Anonymity will ward off curiosity that might infringe on juror's privacy[.]'"); Paccione, 949 F.2d at 1193 (upholding anonymous jury and finding that the court "adequately instructed the jury at the outset of the trial that the special precautions were designed to protect the jury from contacts by the media, thereby implying that the security measures were not the result of threats from the defendants"); Tutino, 883 F.2d at 1133

defense counsel does not cite a single case supporting the proposition that the issuance of the instruction proposed by the government would be improper in any way.

Moreover, the use of an anonymous, partially sequestered jury does not conflict with the defendant's right to conduct meaningful voir dire. See Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981). As the Second Circuit explained in Barnes,

> as long as a defendant's substantial rights are protected by a [v]oir dire designed to uncover bias as to issues in the case and as to the defendant himself, then reasonable limitations on the questioning should not be disturbed on appeal.

604 F.2d at 140. Voir dire may be conducted about subjects other than the jurors' names, addresses and employers' names, and the parties and counsel have an unrestricted opportunity to observe the jurors during this process. Id. at 142-43. Through the use of a questionnaire, the parties can receive ample information about the background and possible bias of potential jurors. See, e.g., Thai, 29 F.3d at 801. Accordingly, under the circumstances presented, empaneling an anonymous, partially sequestered jury will not prejudice the defendant.

---

(upholding anonymous jury procedure where the jury was instructed that "It is a common practice followed in many cases in Federal court to keep the names and identities of the jurors in confidence. This is in no way unusual.").

12

III.    Conclusion

For the reasons above, defense counsel's arguments are meritless. An anonymous, partially sequestered jury is necessary to protect the jury and the integrity of the judicial process, and would not unfairly prejudice the defendant. Accordingly, the government respectfully requests that the Court grant its motion in full.

Dated: Brooklyn, New York
       May 13, 2016

                                                Respectfully submitted,

                                                ROBERT L. CAPERS
                                                United States Attorney
                                                Eastern District of New York

                              By:                  /s/
                                                Shreve Ariail
                                                Melody Wells
                                                Matthew Jacobs
                                                Assistant U.S. Attorneys
                                                (718) 254-7000

cc:     Counsel for Defendant (via email and ECF)