1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,    : 12-CR-134(BMC)
                             :
                             :
                             :
      -against-           : United States Courthouse
                             : Brooklyn, New York
                             :
                             :
                             : Thursday, April 16, 2015
ADNAN HAUSA,                :
                             :
         Defendant.       :
                             :

- - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE BRIAN M. COGAN
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S:

For the Government: LORETTA E. LYNCH, ESQ.
                   United States Attorney
                   Eastern District of New York
                    271 Cadman Plaza East
                    Brooklyn, New York 11201
           BY:  SHREVE ARIAIL, ESQ.
                   Assistant United States Attorney

For the Defendant:  SUSAN GAIL KELLMAN, ESQ.
                   25 Eighth Avenue
                   Brooklyn, New York 11217
           BY:SUSAN GAIL KELLMAN, ESQ., ESQ.

- AND -

DAVID STERN, ESQ.

Court Reporter:  Richard W. Barry, RPR
                Official Court Reporter
                E-mail: rwbarrycourtreporter@gmail.com
    Proceedings recorded by computerized stenography.
    Transcript produced by Computer-aided Transcription.

2

```
1              COURTROOM DEPUTY:  United States versus Adrian
2    Hausa, docket 12-CR-134.  Counsel, please state your
3    appearances starting with the Government.
4              MR. ARIAIL:  Good morning, Your Honor, Shreve Ariail
5    for the United States.
6              THE COURT:  Good morning.
7              MR. STERN:  David Stern, Susan Kellman for Mr.
8    Hausa.
9              THE COURT:  Good morning.  Good morning Mr. Hausa.
10             INTERPRETER:  I'm not well, I have a problem.
11             THE COURT:  Let's have the interpreter sworn, first.
12             (Courtroom Deputy swore the Interpreter.)
13             INTERPRETER:  Mohammed Shuaib.
14             COURTROOM DEPUTY:  You maybe seated.
15             THE COURT:  All right.  Go ahead.
16             MR. ARIAIL:  Your Honor, in terms of the status, at
17   the last status conference, we were talking about the way
18   forward.
19             INTERPRETER:  I don't want to hear any translations.
20             THE COURT:  Fine, you don't have to listen.
21             MR. ARIAIL:  There are a couple of things pending
22   now that we should address, the Government has a pending
23   motion that was filed sometime ago.
24             THE COURT:  I have to stop you, Mr. Hausa is
25   grumbling for the purposes of disrupting these proceedings.
```

3

1          So, start again.  I will try to see if I can hear

2    you over it.

3          MR. STERN:  Judge, would it be possible for us to

4    stand here, I am having trouble hearing myself.  If we can

5    stand right there.

6          THE COURT:  You can stand here, Mr. Hausa has to

7    stay there.

8          MR. STERN:  I didn't mean Mr. Hausa.  I meant

9    ourselves.  Thank you.

10          THE COURT:  All right.  Go ahead.

11          MR. ARIAIL:  In terms of obviously the classified

12    issues are the significant aspect of the case we have to deal

13    with.  There is a pending motion, ECF 43.  I apologize for not

14    bringing to the Court's attention, a motion for the entry of a

15    classified protective order in the case.

16          Defense counsel when we last discussed it, had

17    indicated that they weren't prepared to consent to the entry

18    of it until they resolved the pro se issue.

19          So, I briefly talked with Mr. Stern beforehand.  He

20    may or may not have some comments on the protective order.

21    But that is one issue that needs to be dealt with at least up

22    front.

23          MR. STERN:  I take it the pro se issue is resolved.

24          THE COURT:  That is resolved.  The defendant refused

25    to cooperate in allowing me to ask him the questions that

4

1    would have enabled me to determine whether he could proceed

2    pro se.  And since he will not let me ask the questions, he

3    has to proceed with counsel.

4           MR. STERN:  Okay.

5           MS. KELLMAN:  Excuse me.  I was just going to say,

6    Judge, to complete the record on that.  When we were here last

7    time, I tried to give Mr. Hausa copies of the translations of

8    the questions that the Court might put to him.  We had them

9    translated into Arabic and into Hausa.  He refused to take

10    them from me.  He refused to take them from the Marshals.

11           Then when I got back to the office that day, I put

12    them in the mail and mailed him with an explanation the

13    English questions, the Arabic questions.  And the Hausa

14    questions, hoping-- and the translations rather in those

15    languages, hoping perhaps in a moment of reflection, he might

16    read them on his own.  If he has, he has not communicated that

17    to us.

18           THE COURT:  So he is with counsel.

19           MR. STERN:  I have been on trial, I am still waiting

20    for a verdict in a case.  As soon as I am done, I will look at

21    the protective order and see if we have any objections to it.

22    If we do, I will talk to the Government about it and see if we

23    can resolve it.

24           THE COURT:  How long do you think?

25           MR. STERN:  I think it will take me a day to read

1   it.  Once I'm done, I will look at it.  The jury is coming

2   back Monday and Tuesday.

3            I think they are close, they have been deliberating

4   for a week.  I think they are close to finishing.  Then I will

5   begin to focus on that.

6            THE COURT:  Okay.

7            MR. STERN:  So, certainly next week sometime, I will

8   look at it.

9            THE COURT:  That is fine.

10           So, I will either sustain an objection if there are

11  any or overrule objections and sign something next week.

12           Then what happens?

13           MR. ARIAIL:  Then what happens Your Honor, is there

14  is sort of a couple of categories of classified information

15  that we will be addressing.  So classified information and I

16  have not consulted with a-- I assume Mr. Stern and Ms. Kellman

17  are clear and we should get them--

18           THE COURT:  All right.  I'm afraid that Mr. Hausa is

19  again talking very loudly in his native language and making it

20  impossible for me to hear the attorneys.  It is not a shout,

21  but a loud noise.

22           Mr. Hausa, I'm going to caution you, that if you

23  don't lower your voice, I will have to have you removed from

24  the courtroom.  Are you ready to lower your voice?

25           INTERPRETER:  You are not a Judge.  If you want to

6

1    call me --

2          THE COURT:  All right.  The defendant is not

3    lowering his voice, I can't hear anything.  He is talking even

4    too fast for me to have the Interpreter interpret anything.  I

5    will therefore direct he be removed from the courtroom.

6          We will set him up to watch video in the adjoining

7    courtroom and conclude this conference without him.

8          (Defendant left the courtroom.)

9          THE COURT:  You were saying.

10         MR. ARIAL:  Certainly, Your Honor.

11         So, I just need to confirm obviously once the

12   protective order is filed, that Mr. Stern and Ms. Kellman

13   are-- have the appropriate classifications for the type of

14   discovery that we are going to turn over.  The

15   CISCO(phonetic), who handles classified filings, I just need

16   to contact him and make sure that they are.  I have no reason

17   to think that they aren't.

18         But, then obviously to the extent that Your Honor

19   has a Clerk or-- needs to be-- to make sure they have the

20   right classification as well.  We just need to confirm that.

21         As I said, some classified discovery will probably--

22   we'll be likely be able to turn over prior to any briefing.

23   However, I do anticipate filing a fairly complex motion

24   pursuant to the Classified Procedures Act, Section 4, which

25   would seek summary substitutions or other alternative

7

1    disclosure of classified material.

2           THE COURT:  Okay.

3           MR. ARIAIL:  That is a very complicated process and

4    it will take me a while to get that done.

5           I would hope to be able to get something-- part of

6    the problem Your Honor, is that Ms. Kellman and Mr. Stern and

7    I, are all about to start a very long trial, and so I'm hoping

8    to get that done later in the summer if possible, and for Your

9    Honor's consideration.

10          THE COURT:  Look, I appreciate that pressure, but

11   this is a defendant who is in custody.  I will ask you to do

12   everything you can to pick it up.  All right.

13          MR. ARIAIL:  Certainly.

14          THE COURT:  As I said to you before, it is the

15   Government's issue that it wants to bring this person into a

16   civil court, I am not second guessing that at all.  But then,

17   you can't say, it is so complicated that we can't get to it

18   for six months.  I mean, it-- you have to find a better way to

19   do it, if you are going to do it this way.

20          MR. ARIAIL:  Certainly, Your Honor.  Part of the

21   problem is, is that we all have not been focused on the case

22   given that the case has been in limbo for some time.

23          So, we now have to refocus and reallocate sources

24   and all that-- resources and that sort of thing.

25          THE COURT:  Well, there is another prospective to

1  that too, I don't think we are in a place where we thought we

2  wouldn't be and we are surprised to be here suddenly.  We are

3  where I thought we all knew it was likely we would be.  So we

4  could have started the ball rolling earlier.  But, I am

5  directing the Government to start them rolling now.

6          MR. ARIAIL:  Certainly, Your Honor.

7          THE COURT:  Let's do 60 days.

8          MR. ARIAIL:  Certainly.

9          THE COURT:  Is that worthwhile, is there going to be

10  anything to say in sixty days?

11          MR. ARIAIL:  We will be able to say-- I hope, Your

12  Honor, that we have a protective order entered and some

13  disclosures made.  We will not be in a position to be able to

14  file Section 4 in sixty days.

15          The issue, Your Honor, is in this-- the big issue

16  for us, is in the Second Circuit there is a suggestion that we

17  need to go before the State Secrets Committee before we file a

18  Section 4.  That is a very convoluted bureaucratic process and

19  causes a lot of our delays.

20          That is-- I will leave it at that, Your Honor.

21          THE COURT:  All right.  Well, let's do sixty days

22  anyway, so at least I have the ability to continue to urge the

23  Government to act as expeditiously as possible.  I'm not

24  saying that it is not.  But I want to be able to emphasize

25  that point.

9

1          So what do we have in sixty days.

2          COURTROOM DEPUTY:  June 18th, 11 a.m..

3          MR. STERN:  That is fine.

4          MR. ARIAIL:  Fine for the Government.

5          THE COURT:  All right.  I will exclude time until

6     then based on having --

7          MS. KELLMAN:  Sorry, Judge, I'm in the Court of

8     Appeals.

9          COURTROOM DEPUTY:  June 22nd, a Monday.

10          MR. ARIAIL:  That is fine.

11          MS. KELLMAN:  That is fine.

12          THE COURT:  Mr. Stern?

13          MR. STERN:  That is fine.

14          THE COURT:  I will exclude time until that day,

15     based upon having previously designated the case as complex.

16     That is June 22nd, 11 a.m..

17          MR. STERN:  Just to look into the future a little.

18          THE COURT:  Yes.

19          MR. STERN:  The way the process is likely to go, and

20     again, I don't know what the material is.  So, is that there

21     will be substitutions that you have authorized, we will look

22     at them and potentially say, we want more material under six,

23     whatever is happening.  So, I say that not--

24          THE COURT:  You are just warning me.  It will not be

25     very fast.

10

1          MR. STERN:  That is very likely what will happen.

2          MR. ARIAIL:  As Mr. Stern pointed out, then they

3    will have to articulate specifically what they want and then

4    we will be in a position to oppose that and then to the

5    extent.

6          MR. STERN:  Or not.

7          MR. ARIAIL:  Or not.  And we may end up having to

8    have a hearing on that.  Proceed from there.

9          THE COURT:  All right.

10          MS. KELLMAN:  No doubt, they will fold.

11          MR. STERN:  I say that by way of saying, we are just

12    starting down a long road.

13          THE COURT:  I understand the process and I will try

14    to factor that into my normal desire to move more quickly than

15    I can tell this case will move no matter what.

16          All right.

17

18          - - o o O o o - -

19    I CERTIFY that the foregoing
      is a correct transcript from
20    the record of proceedings
      in the above entitled matter.
21
      s/Richard W. Barry
22    _____
      Richard W. Barry, RPR
23

24

25

RB          OCR