```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK

------------------------------X Docket#
UNITED STATES OF AMERICA,     : 12-cr-00134-ERK-1
                              :
   - versus -                 : U.S. Courthouse
                              : Brooklyn, New York
ADNAN IBRAHIM HARUN A. HAUSA, :
              Defendant       : April 22, 2014
------------------------------X

    TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
         BEFORE THE HONORABLE EDWARD R. KORMAN
            UNITED STATES SENIOR DISTRICT JUDGE
```

**A  P  P  E  A  R  A  N  C  E  S:**

**For the Government:**          **Robert L. Capers, Esq.**
                                 United States Attorney

                          BY:    **Amanda Hector, Esq.**
                                 Assistant U.S. Attorney
                                 271 Cadman Plaza East
                                 Brooklyn, New York  11201


**For the Defendant:**           **Susan Gail Kellman, Esq.**
                                 25 Eighth Avenue
                                 Brooklyn, NY 11217

                                 **David Stern, Esq.**
                                 Rothman, Schneider, Soloway
                                 & Stern, P.C.
                                 100 Lafayette Street,
                                 Suite 501
                                 New York, NY 10013

**Transcription Service:**       **Transcriptions Plus II, Inc.**
                                 61 Beatrice Avenue
                                 West Islip, New York 11795
                                 laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

                                                                  2
                            Proceedings

 1            THE CLERK:  United States v. Adnan Hausa.
 2            Your appearances, counsel?
 3            MR. HECTOR:  Amanda Hector for the government.
 4            Good afternoon, your Honor.
 5            MR. STERN:  David Stern and Susan Kellman for
 6   Mr. Hausa.
 7            MS. KELLMAN:  Good afternoon, Judge.
 8            THE DEFENDANT:  Your Honor.
 9            THE COURT:  Okay.  Do you want to come up?
10   Does anybody want to put on the record what happened?
11            MS. HECTOR:  Certainly, your Honor.  At the
12   last court appearance --
13            THE COURT:  No, no, just before.  I want to
14   hear that too, but just before -- I understand before he
15   came out --
16            MS. HECTOR:  Actually, I believe his counsel
17   can speak to that more appropriately than I can.
18            MS. KELLMAN:  I think he was just upset in the
19   back, Judge, and he was having a bit of a tantrum.  And -
20   -
21            THE CLERK:  Judge, for the record, counsel came
22   out and advised me that the defendant threatened to kill
23   not only his own counsel, but you, Judge.  Therefore, I
24   requested additional marshals be present in the courtroom
25   and the defendant is in handcuffs.

                                                                    3
                             Proceedings

 1          THE DEFENDANT:  It's me that say I am going to
 2   kill the judge?
 3          THE INTERPRETER:  For the record, he is trying
 4   to ask me that -- explain to him if they say I said I am
 5   going to kill the judge.
 6          THE DEFENDANT:  Where did I say that?  When did
 7   I say that?  When did I say that to my lawyer, too?  From
 8   the administrator, I am not ready to kill anybody here.
 9          THE COURT:  Okay.
10          MS. KELLMAN:  That's an improvement.
11          THE COURT:  Okay.
12          MS. HECTOR:  Your Honor, at the last status
13   conference in this case, your Honor entered an order that
14   the defendant be given a psychiatric evaluation.  That
15   ordered was entered.  The defendant was sent to
16   Springfield for that evaluation to be performed.  He was
17   down there for some time.  A doctor by the name of Dr.
18   Demere (ph.) was assigned to conduct the evaluation.  Dr.
19   Demere spent some time with him.
20          The defendant was then sent back to the MCC and
21   Dr. Demere delivered a report to the Court and to
22   counsel.  Unfortunately, while Dr. Demere's report is,
23   you know, fairly voluminous, he indicated that he at that
24   time had not reached a conclusion sort of a degree of
25   certainty that he is used to reaching conclusions with

                                                                    4
                              Proceedings

 1  respect to competency.
 2              We think that's problematic because under the
 3  rule, we need the doctor's opinion as to the defendant's
 4  competency.  As your Honor knows, we already had another
 5  psychiatric who opined that the defendant was competent.
 6              Dr. Demere, however, did indicate in his report
 7  that he thought some additional time with the defendant
 8  with the use of another interpreter could be productive
 9  in allowing Dr. Demere to reach an actual conclusion with
10  a reasonable degree of medical certainty.
11              Based on that, we have submitted a proposed
12  order to the Court which would permit the defendant to be
13  sent back to Springfield, so that he could meet with Dr.
14  Demere again.  Dr. Demere could do whatever Dr. Demere
15  believes is necessary to finish or to conclude his
16  evaluation of the defendant and a report could be issued
17  that is in conformity with the rule.
18              MR. STERN:  We agree with that --
19              MS. KELLMAN:  I think that that's not good.
20              MR. STERN:  -- report is not meaningful in the
21  sense that there is no conclusion.  We think there has to
22  be a conclusion reached.  He's either competent or not
23  competent and Dr. Demere leaves him in some kind of limbo
24  where he says he might be incompetent.  I can't really
25  tell.  I am going to err on the side of saying it.  But

                                                                5
                            Proceedings

1    he doesn't really know.
2             We think he has to be sent back until a
3    conclusion is reached.  If there is a conclusion that he
4    is competent, then we'll do whatever it is that we think
5    we should do.  If the conclusion is he is incompetent,
6    then they'll do whatever they think they should do.
7             THE COURT:  Do you want to say anything?
8             THE DEFENDANT:  Yes.  At first, those people I
9    say I don't really  -- I don't want the lawyer.  I don't
10   want them around me.  That's one.  I could just say I
11   don't know what I am doing at MCC.  You say I am going to
12   put your report at MCC.  Until now, I didn't see any
13   report.  The third one -- when you sent me to Missouri,
14   center health --
15            THE COURT:  Missouri?
16            THE DEFENDANT:   -- I say I don't want to go?
17            MS. KELLMAN:  Missouri.
18            THE CLERK:  Springfield.
19            THE DEFENDANT:  I say I don't want to go that,
20   I am healthy.  You took me.  You pushed me and you forced
21   me to go.  I stayed a month and twenty days, all what
22   they've done to me at Missouri, they gave me an
23   injection, a shot.  They gave me tree or four, the
24   injection that they give the children.
25            And from there, Dr. Miller (ph.), he sat with

```
                                                             6
                        Proceedings
 1   me.  I told him that I'm very okay mentally.  All those
 2   routine, just to kill the time, or to send me to CIA
 3   operatives or for a military investigation.  It's just an
 4   escape.
 5             I don't want to die.  I didn't see the embassy
 6   -- the Niger embassy that I requested for.  I -- I wrote
 7   a report -- a letter to Bank Iman (ph.) and they say the
 8   letter is not going there.  Until now I didn't hear any
 9   (indiscernible) from Bank Iman or United Nation judge.
10   Even the Interpol of United Nations, the truth about this
11   (indiscernible).  And this -- this issue, is not an issue
12   that I want to (indiscernible).
13             For you, if you want to do something, read
14   truthful in the name of God, send me to the United
15   Nation.  The issue in Afghanistan, I recognize it.  The
16   American Marines, I killed five of them.
17             MR. STERN:  Judge, it's our opinion --
18             THE DEFENDANT:  Wait.  I want to complete
19   (indiscernible) --
20             MR. STERN:  -- one second.
21             It's our opinion that our client shouldn't be
22   talking about the facts of his case and we're advising
23   him not to talk about the facts of this case.
24             THE COURT:  I'm not going to let any of that
25   into evidence if and when he goes to trial.
```

7

Proceedings

1     THE DEFENDANT:  I gave my plan and I sent it to
2 Pentagon.  Al Qaeda used my plan.  The United States
3 lawyer, David Bitkower and Shreve.  Oh, it's an agent in
4 Italy.  I told them all this problems and she discovered
5 this, the (indiscernible) that they're using discovery.
6     So now I didn't know why I was arrested and
7 what did you accuse me of.  Till now, I didn't see
8 anybody from CIA, even from the Pentagon.  So what I
9 (indiscernible).  A year, seven month, what are we doing?
10 You took me to the center health.  I am in good health.
11 What am I doing?  So where is the protocol of the United
12 Nations?  That's what I am saying.
13     I didn't ever say that I am going to kill you
14 or kill my lawyer.  I said in front of -- I am the enemy
15 of the United States and you told me not to say I am the
16 enemy of the United States.  That's my truth.  All the
17 people here that they're here, don't want to hear the
18 truth.
19     Do you know how many years I have fought in
20 Afghanistan?  How many people that I have killed in
21 Afghanistan?  How many people that America has killed in
22 Afghanistan?  And so all this now after all this, you are
23 making all these scenarios.  That -- it doesn't make any
24 sense.
25     If I -- at Guantanamo, on those that they have

Transcriptions Plus II, Inc.

8

Proceedings

1  arrested at Afghanistan, were took to Guantanamo.  And
2  within five years since Iran solved that problem.  Those
3  -- those who killed the American Marines that I took to
4  Guantanamo, within five years the ministry of -- the
5  justice minister and they went through their cases.
6  Those who found guilty -- they found them guilty, those
7  who weren't will be released -- were released.  And some
8  also died.
9          And we are here now in the land of America in
10 the justice system and now you put me here for a year and
11 seven months.  And the issue -- what I have done there,
12 the terrorist act that I have committed, we did it in
13 Washington, D.C., at Pentagon.  I'm in that group.  I'm
14 in that group that was sent to Pentagon.  I'm not in that
15 group -- those are from Manhattan, in New York, here.
16          That's why I am asking -- I'm asking even you
17 should take me to the courts in Washington, D.C.  If it's
18 not asking much -- if it's not of the judge of Washington
19 district, you -- you brought me here in New York.  I know
20 all the -- I know -- I know the law.  I know the law from
21 one state to another state.  But I don't know much of it,
22 but I have been hearing about that.  So you tell me
23 what's my -- what am I doing here in New York.
24          So if I killed the Americans and also, the
25 issue has to do with Pentagon, why I am here and not D.C.

```
                                                                  9
                          Proceedings
1    You wasting the time.  I told you I needed a United
2    States judge -- United Nation judge.  And that's how the
3    local was -- was arranged.  They took her Abdul Maghreb
4    (ph.), they took him to the international judge.
5              THE COURT:  I left my copy of the report in
6    chambers.
7              THE DEFENDANT:  Now just take me to that
8    international judge.  Without the truth, you are wasting
9    time.
10   (Pause)
11             THE DEFENDANT:  I have to say something.
12             THE COURT:  Go ahead.
13             THE DEFENDANT:  You want me to talk?  At MCC,
14   at last (indiscernible), I was given a remote -- oh, a
15   report in English about Shamut (ph.)
16             THE INTERPRETER:  I don't know what it Shamut.
17             THE DEFENDANT:  They change my room and they --
18   on the -- they (indiscernible) I can hear from the window
19   that people are talking.  I don't have any technology and
20   there weren't any speaker but from the window, I can hear
21   on the -- maybe they are from the Saudi Arabia
22   government, the federal police of Saudi Arabia.  And I
23   can hear also those also from the federal government in
24   Libya -- from Libya.  I spoke to the Lefanon (ph.).  He
25   didn't answer me.  Till now, the system is still working.
```

Proceedings

1  They took me to Missouri.  That system was still
2  functioning.  Even at the MCC, the system is still
3  working.
4           When they brought me here, the system is still
5  working.  You can just -- I can hear that people are
6  talking.  It's just even to arrest me or to hold me -- to
7  hold my psyche since I came to this court.  At the MCC,
8  and Missouri, they are talking something that will just
9  raise my blood pressure.  I don't know what that system
10 is.  Before you were in (indiscernible).  Since last
11 Christmas till now, then they open it -- they open the
12 system.
13          THE COURT:  All right.  I am going to sign the
14 order that was submitted to me.  You know, based on your
15 conduct and the manner in which you've behaved while you
16 were at the MCC, that's bee placed on the record earlier
17 -- in earlier proceedings, based on the way you've
18 conducted yourself here in court, and just recently in
19 the cell, in the holding cell and the recommendation of
20 the psychiatrist who examined you, that the more
21 conservative course is to determine that you're not
22 competent to proceed.
23          I am going to sign an order that sends you back
24 to Springfield until it's determined by the psychiatrist
25 at Springfield that you're competent to proceed and the

Transcriptions Plus II, Inc.

                                                                11
                          Proceedings

1   report requires and the statute requires that I received
2   reports every six months.  That is, the statute requires
3   that.
4              I suggest that it's one of two things, Mr.
5   Harun, either you're playing crazy or you are crazy and I
6   use the word crazy in the sense that laymen use it and I
7   can't proceed without being certain that you're not crazy
8   and that you're competent to plead -- to go to trial and
9   assist in your defense at this time.
10             I would suggest to you that when you go back to
11  Springfield, that you cooperate more fully with the
12  doctors who were examining you.
13             I don't really know what my case here -- what's
14  the case?
15             THE COURT:  We've gone through this.  This is
16  not the first time here.  You've had an earlier lawyer.
17  Now you have two more lawyers.  If you don't -- if you're
18  unwilling or unable to communicate with them -- you just
19  told me yourself, whether it's true or not or whether
20  you're making it up, that you killed five Americans in
21  Afghanistan.  That you're a terrorist.  And you don't
22  understand what the case is about.
23             THE DEFENDANT:  What I am trying to say if you
24  remember Shreve in front of Amanda, he say he is going to
25  write to the Court, my -- whatever they are accusing me

```
                                                                12
                          Proceedings
 1   of.  And they are going to put it on discovery.
 2              THE COURT:  No, there's an indictment that
 3   contains the charges that you're accused of -- that
 4   you're being accused of.  And you would have received a
 5   copy of that indictment by this point.
 6              All right.  I have had enough.
 7              THE CLERK:  Thank you, marshals.
 8              THE COURT:  Can you come up for a minute.  I
 9   just want to -- I'm putting in the order that it's
10   further ordered that the Court be provided with periodic
11   reports --
12              MR. STERN:  You mean interim reports on how
13   things are going?
14              THE COURT:  Yes.  What else do I want to know?
15              MR. STERN:  I'm not sure how things will be
16   going but I think it's a good idea.
17              MS. KELLMAN:  Well, maybe interim reports will
18   suggest that Springfield not be sending him back until
19   they have something to say.
20              MS. HECTOR:  Well include it in the order.
21              MS. KELLMAN:  Yes, okay.
22              THE CLERK:  Get this up on ECF today and copies
23   will go to the marshals.  Thank  you very much.
24              MS. HECTOR:  Thank you.
25              MS. KELLMAN:  Thank you.
```

Transcriptions Plus II, Inc.

13

Proceedings

1    MR. STERN:  All right.  Thank you.
2    MS. HECTOR:  Thank you, Judge.
3    THE COURT:  All right.
4            (Matter concluded)
5                 -oOo-
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Transcriptions Plus II, Inc.

14

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **2nd** day of **June**, 2016.

*Linda Ferrara*
Linda Ferrara

CET\*\*D 656
Transcriptions Plus II, Inc.