```
                                                                    1

                       UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF NEW YORK

       - - - - - - - - - - - - - - X

        UNITED STATES OF AMERICA,       : 12-CR-00134(BMC)
                                        :
                                        :
                                        :
              -against-                 : United States Courthouse
                                        : Brooklyn, New York
                                        :
                                        :
        ADNAN IBRAHIM HARUN A HAUSA,    : Wednesday, July 22, 2015
                                        : 11:30 a.m.
               Defendant.               :
                                        :
       - - - - - - - - - - - - - - X

            TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
                   BEFORE THE HONORABLE BRIAN M. COGAN
                       UNITED STATES DISTRICT JUDGE

                         A P P E A R A N C E S:

       For the Government: KELLY T. CURRIE, ESQ.
                              Acting United States Attorney
                              Eastern District of New York
                                271 Cadman Plaza East
                                Brooklyn, New York 11201
                           BY:  SHREVE ARIAIL, ESQ.
                                AMANDA HECTOR, ESQ.
                                Assistant United States Attorneys

       For the Defendant:  SUSAN G. KELLMAN, ESQ.
                                25 Eighth Avenue
                                Brooklyn, New York 11217

                           ROTHMAN, SCHNEIDER, SOLOWAY & STERN, P.C.
                                100 Lafayette Street
                                Suite 501
                                New York, New York 10013
                           BY:  DAVID STERN, ESQ.

       Also Present:       MOHAMMED SHUAIB, HAUSA INTERPRETER

       Court Reporter:     SHERRY J. BRYANT, RMR, CRR

       Proceedings recorded by mechanical stenography, transcript
       produced by Computer-Assisted Transcript.
```

PROCEEDINGS                                           2

1            (In open court.)
2            (Defendant enters courtroom.)
3            COURTROOM DEPUTY:  United States versus Adnan Hausa,
4    Docket Number 12-CR-134.  Counsel, please state your
5    appearances, starting with the government.
6            MR. ARIAIL:  Good morning, Your Honor.  Shreve
7    Ariail and Amanda Hector for the United States.
8            MS. HECTOR:  Good morning.
9            MR. STERN:  David Stern and Susan Kellman for Mr.
10   Hausa.
11           THE COURT: Good morning.  Good morning, Mr. Hausa.
12   We have an interpreter who we'll have sworn.
13           (Interpreter sworn.)
14           COURTROOM DEPUTY:  Please state and spell your name
15   for the record.
16           THE INTERPRETER:  Mohammed Shuaib, S-h-u-a-i-b.
17           THE COURT:  All right.  What is the status?
18           MR. ARIAIL:  Your Honor, as the Court may have
19   noticed, we filed a request for the entry of a scheduling
20   order, a jointly-proposed scheduling order in the case.
21           We also had a request for the entry of a protective
22   order regarding classified information, which is also agreed
23   upon, although I understand Mr. Stern wanted to address one
24   aspect of the classified protective order before we proceed to
25   finalizing it.

1           (Defendant confers with counsel.)
2           THE COURT:  For the record, there's a conversation
3  going on between the defendant and his counsel through an
4  interpreter.  I can't hear what it is, but it's not on the
5  record.
6           MR. STERN:  Judge, as to the protective order, the
7  one thing I wanted to raise with you is that there's a portion
8  of the protective order which requires us to make judgments
9  about what things -- and this is not the exact language, but
10 may be classified.  That is, we get information from someone,
11 we're not allowed to disclose it, but we think it may be
12 classified.  I've conferred with the government about that,
13 which is the one part of the protective order that concerns me
14 some.
15          THE COURT:  Where is that?
16          MR. ARIAIL:  It's 2.a. romanette ii on the second
17 page, Your Honor.
18          MR. STERN:  The solution that I'm proposing to that
19 and that I proposed to the government is that if we come
20 across information from a witness or another source that --
21          (Defendant confers with counsel.)
22          THE COURT:  All right.  There's another conversation
23 occurring between counsel and the defendant.
24          MR. STERN:  Before I talk about that, he wants me to
25 make sure you understand that he wants me to do nothing on his

1  case, that he's directed me to do nothing on his case, that --
2           (Defendant confers with counsel.)
3           MR. STERN:  Any lawyer.  And that he won't --
4  although he doesn't want us to do anything, he also doesn't
5  want to answer the questions that I've tried to tell him he
6  needs to answer in order to represent himself.
7           Having said that, I think and I think you think that
8  we have an obligation to represent him, and that's what we
9  intend to do to the best of our ability, whatever that is.
10          So, having said that -- and I think that's what he
11 wanted me to convey to you -- I'm going to continue with what
12 I was saying.
13          THE COURT:  Okay.
14          MR. STERN:  Our proposal for how to deal with that
15 section of the protective order, which is the one section that
16 concerns me, is that if we come across information and we're
17 uncertain about whether or not it may have been or may be
18 classified because we get it from a source other than a
19 government source -- that is, it's crystal clear if you get a
20 classified document, it's classified.  You get it from certain
21 people, it's classified.
22          But if we do an investigation and get it from
23 another source, our proposal is that we first go to Mike
24 Macisso or Harry Rucker, whoever's in charge, and discuss it
25 with them, but that they not be allowed to discuss it with the

1  government.  They tell us if they believe it to be classified.
2  If they don't know -- and we would also discuss it with you.
3           If they don't know, we then would ask for the
4  opportunity to have a firewall U.S. Attorney appointed so that
5  he or she could make that determination, because there may be
6  things we discover -- I don't know what those things would be
7  yet -- that we wouldn't want revealed to the government.  It
8  would be part of our investigation that I suppose, assuming he
9  would talk to me, could potentially be derived from our
10 client.
11          THE COURT:  Who are the first two people you
12 mentioned you said you would go to?
13          MR. ARIAIL:  It might be helpful if I explained the
14 context.  So, Your Honor, as the Court is aware, there are
15 classified information security officers who are designated to
16 handle classified issues that come up.
17          THE COURT:  Okay.  So the defendant's proposal is he
18 would bring this information obtained by third parties to
19 those officers first, see if they have a problem with it.  If
20 they have a problem with it, then what happens?
21          MR. STERN:  I think then that would end the inquiry.
22 We either won't use it -- I mean, I assume they know.  These
23 are neutral people who we've had very good experiences with.
24 We have no reason to doubt their word about anything.  So if
25 they said to us, that's classified, we would treat it as

classified information.  If we intended to use it, we would go through whatever process we had to go through to try and use it.

THE COURT:  Okay.  What's wrong with that?

MR. ARIAIL:  There is no problem with that, Your Honor.  And the order as it's written contemplates ex parte submissions and presumably ex parte consultation with the classified information security officer.  So that's why I don't think it's an issue.  It's just something I think defense counsel wanted to raise to the Court.

THE COURT:  Well, I will sign the order with that gloss on it, that that's how it's going to work.

MR. ARIAIL:  If the issue comes up, obviously then defense counsel can address it.

THE COURT:  Now, I do have to note that the defendant while this was going on was first humming again; and secondly, he wasn't allowing his interpreter to interpret, because he kept talking to the interpreter and I'm not sure he's interested in following the proceedings.

All right.  Is there anything --

MR. STERN:  Anyway, that's the only issue we have with the protective order and I think that's been clarified to everyone's satisfaction.

THE COURT:  Mr. Hausa, I'm not going to hear from you except through your attorney.

1   THE DEFENDANT:  I don't think I'm guilty and what
2  happened here is not my problem.  I am clear from you, clear
3  from them, clear from them.  Come back to United Nations
4  administrative judge.  Send me to United Nations
5  administrative judge.
6   THE COURT:  I didn't understand everything the
7  defendant said.  Were you able to get it?
8   THE REPORTER:  United Nations administrative judge.
9   THE COURT:  Anything further?
10   MR. ARIAIL:  The other thing that we had also
11  submitted, Judge, was a jointly-proposed schedule --
12   THE COURT:  Mr. Hausa, you have to stop interrupting
13  the proceedings.
14   THE DEFENDANT:  You talking, I talking.  Okay for
15  me.  You talking, I talking.  You have United Nations --
16   THE COURT:  Mr. Hausa has indicated that as long as
17  anyone is talking he's going to talk, as he's doing now, and
18  you have to talk over him to be heard.
19   Mr. Hausa, you have to be quiet because you're
20  disrupting the proceedings.  If you continue to disrupt the
21  proceedings, I will need to have you removed.
22   THE DEFENDANT:  -- international judge, I want
23  international judge --
24   THE COURT:  Mr. Hausa, I'm going to ask you again to
25  cease disrupting the proceedings or I will have to have you

1  removed.
2          THE DEFENDANT:  -- administrative judge, United
3  Nations administrative judge, I want an administrative judge,
4  United Nations administrative judge --
5          THE COURT:  Mr. Hausa, this is the last time.  I
6  know you want a United Nations administrative judge or
7  something.  That's not going to happen.
8          THE DEFENDANT:  -- administrative judge --
9          THE COURT:  The defendant is making it impossible to
10 continue with these proceedings.  I'm going to instruct the
11 marshals to bring him to the courtroom next door so that he
12 can watch the proceedings on video.
13         I am finding that the defendant, by his actions, has
14 voluntarily indicated his desire not to be present and to
15 absent himself from these proceedings.
16         (Defendant exits courtroom.)
17         THE COURT:  All right.  The defendant has been
18 removed to the other courtroom where the video equipment is
19 set up.
20         What else do we need to cover?
21         MR. ARIAIL:  Your Honor, we had submitted a
22 jointly-proposed scheduling order for the dealing with
23 classified information.  There was -- I apologize.  The filing
24 dates for the defense section 5 and the government section 6
25 should be dated 2016 and not 2015; but otherwise, the defense

1   and the government are in agreement on that schedule.
2           THE COURT:  Five and 6?
3           MR. ARIAIL:  Yes.
4           THE COURT:  Where in 6?
5           MR. ARIAIL:  I'm sorry, I don't have -- I gave my
6   copy to your clerk with the edits on it.
7           THE COURT:  I think it's 4 and 5.  On or before
8   February 15th, 2016?
9           MR. ARIAIL:  Yes, that's right.
10          THE COURT:  The government shall file its response?
11          MR. ARIAIL:  That is correct.  And any affirmative
12  motions under section 6.
13          THE COURT:  Right.  And then in paragraph 5,
14  submissions incorporating non-classified discovery shall be
15  made in accordance with the terms of the protective order
16  entered by the Court.  That is 2012, is it not?
17          MR. ARIAIL:  That is a court order, previously in a
18  court order, Your Honor.
19          THE COURT:  So there's only one change that's
20  needed; correct?
21          MR. ARIAIL:  I believe there are two changes:
22  There's the filing date for defenses, section 5, which is
23  February 1st, should be 2016; and then government section 6
24  should be February 15th, 2016.
25          THE COURT:  That's 3 and 4, paragraphs 3 and 4.

PROCEEDINGS 10

1  Okay.  Any objection to my signing that scheduling order?
2              MR. STERN:  There is no objection.  We obviously
3  haven't seen the material and I suppose could conceivably ask
4  for more time, but I think that's unlikely.  This will
5  probably be a good schedule for us.
6              THE COURT:  So I signed that with the changes noted
7  in the margin.  And then we need defense counsel's
8  acknowledgement to be bound by the protective order on the
9  MOU.
10             MR. ARIAIL:  They have copies of them right now.
11             MS. KELLMAN:  They're signed.
12             THE COURT:  You have signed those?
13             MS. KELLMAN:  Yes, Judge.
14             THE COURT:  All right.  And then the last thing is
15 the protective order, really the first thing that I have to
16 sign, and I'll sign that as of today.
17             All right.  When shall we next meet?
18             MR. ARIAIL:  I think, given the scheduling order, I
19 think a fairly long break is appropriate.
20             THE COURT:  Ninety days?
21             MR. ARIAIL:  That's fine for the government, Your
22 Honor.
23             MS. KELLMAN:  That's perfect.
24             THE COURT:  What do we have, Melonie?
25             COURTROOM DEPUTY:  October 20th at 4:30.

SHERRY BRYANT, RMR, CRR

PROCEEDINGS 11

1  THE COURT: Okay. I will exclude time until then.
2  Based on this being a complex case, considering the security
3  issues, I find that the ends of justice outweigh the interests
4  of the public and the defendant in a speedy trial, so that we
5  can get going with the discovery and hopefully advance the
6  case as quickly as possible.
7  Anything else?
8  MR. ARIAIL: Nothing from the government, Your
9  Honor.
10  THE COURT: One question I had, Mr. Stern. When you
11  were talking to him before, I thought that the interpreter was
12  in the courtroom. Are you able to speak to him in English?
13  MR. STERN: I guess I have to think to myself
14  whether that implicates some kind of attorney-client issue.
15  THE COURT: I mean, you may be right about that. In
16  fact, I'm going to withdraw the question. I may put it to you
17  again next time we meet, and you'll think about it and let me
18  know if that's right. All right. Thank you all.
19  MR. ARIAIL: Thank you, Your Honor.
20  MS. KELLMAN: Thank you.
21  MR. STERN: Here's ours signed.
22  THE COURT: I'm going to ask the U.S. Attorney to
23  take custody of those.
24  MR. ARIAIL: I'll file these, Your Honor.
25  (Whereupon, the proceedings were adjourned.)

SHERRY BRYANT, RMR, CRR

12

1    I certify that the foregoing is a correct

2    transcript from the record of proceedings in the

3    above-entitled matter.

4

5                      /s/    Sherry Bryant
                       Sherry Bryant, RMR, CRR
6                      Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25