

U.S. Department of Justice

United States Attorney
Eastern District of New York

SA/MW/MJ/JK
F. #2011R01313

271 Cadman Plaza East
Brooklyn, New York 11201

January 20, 2017

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Harun
     Criminal Docket No. 12-134 (BMC)

Dear Judge Cogan:

  The government writes in connection with the Court's order that the government and the defendant submit a joint questionnaire for the jury by January 20, 2017. On Monday, January 17, 2017, the defense submitted a proposed juror questionnaire via ECF, without disclosing it, or discussing it in any way with, the government in advance of its filing. See ECF 199. In response to defense counsel's submission, the government filed a letter and proposed juror questionnaire later that day. Id.

  As discussed in the parties' joint submission filed earlier today, the government remains willing to work with the defense to in an effort to reach an agreement regarding the parties' proposed jury questionnaires. However, given the significant areas of disagreement, this letter sets forth the government's objections to the defendant's requests.

  As a general matter, the government's proposed juror questionnaire submitted on Monday is substantially identical to the final juror questionnaire used in a recent terrorism trial in front of the Honorable Nicholas G. Garaufis. See United States v. Pugh, 15-CR-116 (NGG), Dkt. No. 75.[1] The Pugh questionnaire – like the proposed questionnaire submitted by the government in this case – is concise, fair, balanced, well-organized and non-repetitive. Notably, the Pugh questionnaire was the result of government and defense input and reflects

---

[1] A copy of the final questionnaire used in Pugh is attached hereto as Exhibit A.

the court's resolution of any disagreements between the parties in that case. In adapting its draft questionnaire to this case, the government simply adapted to the specific facts and charges in this case and otherwise made minor organizational and language modifications. As such, the government's proposed questionnaire is not an opening bid, but a considered and reasonable proposal, based on precedent and input from other recent terrorism cases tried in this Court house, including U.S. v. Abid Naseer, 10-CR-19 (RJD), and U.S. v. Ahmed, et al., 12-CR-660 (SLT/JG).[2]

As set forth in the joint submission filed earlier this evening, the parties have conferred and agree that the Court should inquire into certain areas.  As indicated, the substantive areas of agreement are as follows:

- The government's proposed questions regarding juror hardship, (Gvt. Proposed Questions 1-2, 58-60), are generally addressed in the defense questionnaire, (Def. Proposed Questionnaire at p. 1-2).

- The government's proposed questions regarding juror background information, (Gvt. Proposed Questions 3-27), are generally addressed in the defense questionnaire, (Def. Proposed Questionnaire at p. 2-3).

- The government's proposed questions regarding law enforcement and juror interaction with the legal system, (Gvt. Proposed Questions 28-32, 37, 40), are generally addressed in the Defense questionnaire, (Def. Proposed Questionnaire at p. 3-4).

- The government's proposed questions regarding the military, (Gvt. Proposed Questions 41), are generally addressed in the defense questionnaire, (Def. Proposed Questionnaire at p. 4-5).

- The government's proposed questions regarding news sources, (Gvt. Proposed Questions 24-25, 53-54), are generally covered by the defense questionnaire, (Def. Proposed Questionnaire at p. 6).

- The government's questions regarding the jurors' knowledge of the case (Gvt. Proposed Questions 52-53) are generally covered by the defense questionnaire, (Def. Proposed Questionnaire at p. 7).

- The government's questions regarding jurors' experiences or beliefs regarding terrorism and Islam (Gvt. Proposed Questions 28, 34-40, 42-45, 48, 55-56), are generally covered by the defense questionnaire, (Def. Proposed Questionnaire at p. 7-10).

---

[2] Copies of the final jury questionnaires in Nasser and Ahmed case are attached hereto for the Court's consideration as Exhibits B and C.

- While the government believes that a juror instruction would be appropriate if the defendant refuses to appear in Court, defense questions regarding this issue are premature and inappropriately addressed to the venire prior to the defendant's refusal to appear, (Def. Proposed Questionnaire at p. 10-11).

- The government's proposed questions regarding jurors' ability to follow certain legal principles, (Gvt. Proposed Questions 46-51), are generally covered by the defense questionnaire (Def. Proposed Questionnaire at p. 11-12).

Notwithstanding that general agreement on substance, the government believes that, as currently proposed, many of the defendant's questions are repetitive, argumentative or irrelevant. For example, the defense questionnaire regarding military service includes three questions, containing more than a half-dozen sub-parts, many of which are repetitive, irrelevant, factually incorrect, or are otherwise biased. (See, e.g., Def. Proposed Questions 22(d)-(e) regarding connections to and service at Guantanamo Bay, and Proposed Question 24, "where it is alleged that Mr. Harun *killed* members of the U.S. military").[3] These questions are easily contrasted with the government's question on military service which broadly and evenly covers all relevant areas of inquiry, including service history, location and combat experience. (See Gvt. Proposed Question 41.)

Relatedly, the government included several questions to determine whether jurors "have any views about Muslims or the Islamic faith that would prevent [them] from being an impartial juror in this case." While this question alone would be sufficient to uncover potential bias, in an abundance of caution the government has additionally proposed asking the jurors whether their views about specific terrorist groups or the U.S. response to terrorism abroad would prevent them from being impartial. (See Gvt. Proposed Questions 42, 43 and 55.)

In contrast, nearly one-quarter of the defense questionnaire concerns "experiences and beliefs" regarding "Terrorism/Islam." (Def. Proposed Questionnaire at p. 7-10.) These questions are excessively detailed, redundant and inflammatory. For example, after asking generally whether the "nature of the charges" or the defendant's alleged membership in al-Qaeda would prevent jurors from being impartial (Def. Proposed Questions 38-39), the defense goes on to specifically inquire about the "September 11, 2001 al Qaeda terrorist attacks" and the "Times Square and subway bomb attacks," (Def. Proposed Questions 40-41). The defense then proposes to ask jurors (1) to "rate [their] knowledge of Islam on a scale of 1 to 5"; (2) whether they believe that "Islam supports violence to a greater extent than other religions"; and (3) to describe what they consider "the most negative aspect of Islam." (Def. Proposed Question 43-45.)

The defense's final proposed question asks jurors whether they "think non-US citizens charged w/ [sic] terrorism offenses should be afforded the same rights as citizens in

---

[3] This is inaccurate. The government has not alleged that "Mr. Harun killed members of the U.S. military," but rather that he conspired to murder U.S. nationals.

3

US criminal courts." (Def. Proposed Question 53.) Besides being irrelevant and redundant, this question improperly invites the jurors to speculate that the defendant's rights have been infringed upon in connection with his prosecution in this district.

The defense's proposed questions regarding jurors' knowledge of the case are similarly flawed. (Def. Proposed Questionnaire at p. 7). These questions are either too open ended (see, e.g., Def. Proposed Question 36 "please tell us what feelings or opinions you may have formed") or simply repetitive. . For example, the defense twice proposes to ask jurors whether they have already "formed an opinion as to the innocence or guilt of Mr. Harun in this case before hearing the evidence." (Id.; see also Def. Proposed Questions 47, 35(a), 35(b), 36, 36(a))). By contrast, the government's questions regarding jurors' knowledge of the case appropriately focus on determining (1) what jurors already know about the case and (2) whether this knowledge would prevent them from serving impartially as a juror. (Gvt. Proposed Questions 52-54.)

Other of the defendant's proposed questions are too broad, conditional, inconsistently phrased; in other words they fail to get at whether a potential juror can be fair and impartial (e.g. Def. Proposed Questions 36(a) "Would these feelings make it difficult for you to sit as a fair and impartial juror in this type of case?"; 38 "Does the nature of the charges themselves cause you to doubt your ability to serve as a juror in this case?"; 39 "Does the allegation . . . cause you to doubt your ability to serve as a completely fair juror in this case"; 40-41 "Do you have any personal experiences . . . that might interfere with your ability to serve in a case of this nature?"; 42 "If yes, might interfere [sic] with your ability to serve in a case of this nature;" 45 "If yes, might those feelings interfere with your ability to serve in a case of this nature?"). Proposed questions regarding law enforcement personnel and military are also too open ended and go well beyond the determining whether a potential juror would be fair and impartial (e.g. Def. Proposed Question 48 "Would you be inclined to believe a witness either more or less solely by reason of the witness being a federal agent or law enforcement officer"; 49 "Would you be inclined to believe a witness either more or less solely by reason of the witness being a member of our armed forces?"). In contrast, the government's proposed questions regarding law enforcement witnesses are prefaced by an instruction that the witness's testimony is not to be given any more or less credence as a result (see, e.g., Gvt. Proposed Question 48), and followed by a straightforward question: "Will you accept and apply this rule of law? Yes or No. If no, please explain.")

Finally, many of the defendant's questions are simply inappropriate. Most egregiously, the defense seeks to inquire about the jurors' voter registration (see Def. Proposed Question 4, p. 2 "Are you a registered voter?"), and the jurors' political affiliation (see Def. Proposed Question 4, p.2 "what is your party affiliation"). The questionnaire seeks to improperly inquire about the jurors' political identity (see Def. Proposed Question 5, p. 2 "Do you identify politically with: Christian Fundamentalists[,] Traditional Conservatives[,] Libertarian[,] Moderates, [or] Liberals.")

4

                    Respectfully submitted,

                    ROBERT L. CAPERS
                    United States Attorney

By:    /s/
                    Shreve Ariail
                    Melody Wells
                    Matthew Jacobs
                    Assistant U.S. Attorneys

                    Joseph N. Kaster
                    Counterterrorism Section
                    U.S. Department of Justice

cc: All defense counsel of record, via ECF and e-mail