LAW OFFICES OF

## JOSHUA L. DRATEL, P.C.

A PROFESSIONAL CORPORATION

29 BROADWAY
Suite 1412
NEW YORK, NEW YORK 10006
---
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: JDratel@JoshuaDratel.com

JOSHUA L. DRATEL                                                                STEVEN WRIGHT
—                                                                              *Office Manager*
LINDSAY A. LEWIS
WHITNEY G. SCHLIMBACH

February 28, 2017

**BY ECF**

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:   *United States v. Adnan Harun Hausa*,
                      12 Cr. 134 (BMC)

Dear Judge Cogan:

      This letter is submitted on behalf of defendant Ibrahim Adnan Harun Hausa, whom David Stern, Esq., and Susan G. Kellman, Esq., and I represent in the above-entitled matter, and constitutes Mr. Harun's opposition to the government's motion *in limine* submitted in its February 20, 2017, letter (Docket # 224).

      It is respectfully submitted that, for the reasons detailed below, the government's application, replete with conclusory and even circular assertions of relevance and admissibility, should be denied in all respects. Those reasons include:

(1)    the government's motion is untimely. The deadline for motions *in limine* was December 1, 2017. Clearly, the government was aware of this evidence at that time – indeed, significantly earlier – but failed to make an appropriate motion until the very eve of trial. As a result, the motion should be precluded as untimely;

(2)    the proffered evidence is not relevant to this case because none of it pertains to times during which or places at which Mr. Harun was present, and/or the evidence cannot be connected to Mr. Harun in any reliable fashion;

(3)    the proffered evidence should be precluded pursuant to Rule 403, Fed.R.Evid., because it is cumulative and/or misleading, will confuse the jury with respect to

<table>
<tr><td>LAW OFFICES OF<br>**JOSHUA L. DRATEL, P.C.**</td><td>Hon. Brian M. Cogan<br>United States District Judge<br>Eastern District of New York<br>February 28, 2017<br>Page 2 of 11</td></tr>
</table>

the issues, and/or because its prejudicial impact substantially outweighs any probative value it might possess. In addition, the materials are inadmissible pursuant to Rule 403 because they relate in large part to issues that are not in dispute and/or to which the defense is prepared to stipulate.

As set forth below, either individually or in combination, these reasons compel denial of the government's *in limine* motion in its entirety.

**I.      *The Government's Motion Is Untimely***

The government submitted the motion at issue February 20, 2016, nearly three months after the deadline for motions *in limine* elapsed, without offering any viable excuse for its dilatory filing, which relates to materials that have been in the government's possession since well before the December 1, 2016, deadline. Also, if, as the government maintains in its current motion, its relevance is so manifest, its usefulness should also have been apparent long ago – when it first came into possession of the material.

Accordingly, the government's motion should be denied as untimely.

**II.     *The Evidence Is Not Relevant to This Case Because None of It Implicates Mr. Harun***

The government's claims notwithstanding, the proffered evidence is not relevant to this case because none of it implicates Mr. Harun. Instead, each piece represents an attempt to buttress the government's case with documents and testimony that lack any connection to Mr. Harun in time, place, or content.

   **A.     *The "Cole Video"***

Regarding what the government denominates as the "Cole Video," as noted below, according to Sajid Badat, a cooperating government witness who has testified multiple times for the U.S. government, and who was present at the filming of the training scenes, those scenes were not even filmed at al Farouq Camp.

Mr. Badat has testified that the Cole Video depicts Mr. Badat's advanced urban warfare training class at Ubaydah training camp, also known as the *matar*, though Mr. Badat is not pictured in the video because he was injured before filming took place. *See* March 11, 2014, Testimony of Sajid Badat in *United States v. Sulaiman Abu Ghayth*, S13 98 Cr. 1023 (LAK), at 507-11, 627.

That video, which was shot at a facility near Kandahar Airport, as well as the urban

| | |
|---|---|
| LAW OFFICES OF<br>**JOSHUA L. DRATEL, P.C.** | Hon. Brian M. Cogan<br>United States District Judge<br>Eastern District of New York<br>February 28, 2017<br>Page 3 of 11 |

warfare course it depicts, of course, bear no relation to Mr. Harun's basic course at al Farouk camp. *Id*.

Also, it is plain from the government's motion that CW-1 (whose identity is apparent to the defense due to the 3500 material) did not have any contact with Mr. Harun. According to the 3500 material, CW-1 was never in a guest house or the al Farouq camp at the same time as Mr. Harun, and does not have any knowledge of Mr. Harun of *any* kind.

In addition, other gratuitous elements of the government's proffered evidence – such as any wide dissemination of the Cole Video, CW-1's proposed transportation of the video outside Afghanistan, and even the bombing of the U.S.S. Cole itself in October 2000 – are similarly unrelated not only to Mr. Harun, but to any of the charged offenses or issues in this case. As a result, they are not offered for any proper evidentiary purpose.

Likewise, CW-1's stay at a guesthouse[1] that Mr. Harun subsequently visited is without import. There is not *any* evidence that Mr. Harun's later stay there replicated that of CW-1. Thus, CW-1's experience at the guesthouse is wholly irrelevant. Indeed, the *entirety* of the evidence and/or testimony the government intends to introduce through CW-1 occurred before Mr. Harun even arrived in Afghanistan.

Similarly, CW-1's experience at the al Farouq Camp does not bear any relationship to Mr. Harun's, and not only because there was not any temporal overlap. The al Farouq Camp was a large, multifaceted facility with a variety of training courses and physical plants. *See* Expert Report of Marc Sageman, M.D., Ph.D. in *United States v. Babar*, 06 Cr. 194 (JCH) (which is Exhibit 8 to Mr. Harun's motion pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 526 U.S. 579 (1993), Docket #159-9), at 40-42. It is analogous to a large U.S. university campus with distinct and disparate elements, at which a student with a disciplinary concentration in French literature would not likely be at all exposed to the architecture school and its curriculum.

Here, Mr. Harun by his own account took only the basic course, an abbreviated 2-3 week program. That was significantly shorter than the eight-week course CW-1 attended and completed.

In addition to the above-stated facts that negate any relevance of the Cole Video and ancillary evidence the government seeks to introduce through CW-1, the al Farouq Camp moved a half-dozen times prior to September 11, 2001, and effectively disbanded shortly thereafter.

---

[1] For purposes of this letter, the government's motion is treated as accurate with respect to the substance of the proffered evidence and the content of the testimony, and that the description of events therein are accurate as well.

| | |
|---|---|
| LAW OFFICES OF<br>**JOSHUA L. DRATEL, P.C.** | Hon. Brian M. Cogan<br>United States District Judge<br>Eastern District of New York<br>February 28, 2017<br>Page 4 of 11 |

Thus, neither CW-1 nor the Cole Video nor any other evidence or testimony can establish that the al Farouq Camp that CW-1 or Mr. Harun attended were in the same location.

The government makes other claims that do not confer relevance upon the Cole Video. For example, *al Qaeda* is not congruent with the charged conspiracy; membership in that organization is neither necessary nor sufficient to establish participation in the charged conspiracies. The government would expand the conspiracy to incorporate decades of conduct and persons without the slightest proof that it is part of the same agreement.

The government did not charge this case pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962(a)-(d), which involves the conduct of an enterprise rather than the more limited concept of a conspiracy. Thus, the government cannot create a conspiracy without proof that the purported members were party to the same agreement to commit the same specific criminal conduct.

In addition, the government's disavowal notwithstanding, it is seeking to introduce the Cole Video for its truth. Otherwise, contrary to the government's claim in its motion, at 5, it could not contend that the Cole Video "itself serves as strong evidence of the conspiracy's existence."

The government further engages in extraordinarily circular declarations. For example, the government asserts in conclusory fashion that

> the conspiracy to kill U.S. nationals included the defendant, the producers, and any participants in the Cole Video. The defendant's detailed descriptions of his criminal activities as a member of al-Qaeda clearly establishes his involvement in the conspiracy.

*Id.*[2]

Nor is the Cole Video a statement against penal interest pursuant to Rule 804(B)(3), Fed.R.Evid. (*see* Government Motion, at 6). Even if statements by masked and anonymous persons could implicate those declarants to "so great a tendency" to expose them to criminal liability, the requirement that any statements be "[s]upported by corroborating circumstances that clearly indicate its trustworthiness" is refuted by the government itself, which notes that the Cole Video is *propaganda*. *Id.*, at 2, 5.

---

[2] That contention – citing Mr. Harun's statements as conclusive proof – also demonstrates that, as discussed **post**, at 8, the Cole Video is entirely cumulative.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Brian M. Cogan
United States District Judge
Eastern District of New York
February 28, 2017
Page 5 of 11

Moreover, the government has not established that any declarants are unavailable. Until they are identified, there cannot be any such finding because the declarants could very well be in U.S. custody, or the custody of a foreign sovereign (and therefore would be available). Regarding the anonymity of the declarants, the cases cited by the government are inapposite because in *United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011), the defendants were alleged to have participated in the meetings during which the unattributed notes were made. *Id.*, at 501 ("[m]any of the documents referenced defendants Elashi, El-Mezain, and Baker by name, as well as HLF" [which was also a defendant]). Here, that is not the case at all.

Similarly, in *United States v. Maldonado-Rivera*, 922 F.2d 934, 957 (2d Cir. 1990), the document at issue bore the terrorist organization's logo, was found at a co-conspirator's home, and contained specific information only a co-conspirator would know, *i.e.*, the health status of a member of the organization.

B.     *The "Vehicular Ambush Instructions"*

As a threshold matter, the "Vehicular Ambush Instructions" are, in fact, a set of handwritten notes, collected three years *after* Mr. Harun was present at the general location, without the slightest provenance. There is not any evidence who wrote them, when they were written, whether they were shared with anyone else (and/or when and where), and whether Mr. Harun was ever exposed to them – directly or indirectly.

Indeed, the government reduces to a footnote, at 8 n.7, the dispositive aspect of the issue:

> [t]his is to be contrasted with a situation in which the government were seeking to establish, for example, for example, that the defendant carried out an attack similar to the vehicular ambush described in the document, or that the defendant built a fortification consistent with the description contained therein.

Given those material distinctions between the nature of the "instructions" and Mr. Harun's conduct, how then are the "instructions" relevant to this case? Yet the government, having made the defense's point most convincingly, persists in arguing that the "instructions" are relevant to its prosecution of this case.

Nor can the government allege any connection between the "instructions" and the basic course of the type Mr. Harun attended; rather, the "instructions" plainly represent a more advanced program. Thus, the "instructions" lack any connection to Mr. Harun with respect to time, place, experience, or coursework, or exposure by Mr. Harun to them.

LAW OFFICES OF  
**JOSHUA L. DRATEL, P.C.**

Hon. Brian M. Cogan  
United States District Judge  
Eastern District of New York  
February 28, 2017  
Page 6 of 11

      Instead, the government resorts again to completely circular arguments, asserting at 8 that "inferential conclusion that these writings were obviously made by an anonymous coconspirators [sic] of the defendant in furtherance of the conspiracy discussed above." Regarding the government's reliance, at 8 n.8, on Rule 804(B)(3), Fed.R.Evid., as a basis for admissibility, the anonymous "instructions," which describe a military tactic and not terrorism, also fail to constitute admissions against penal interest for the same reasons as set forth **ante**, at 4-5, with respect to the Cole Video.

      C.    *The "Camp Malik Notebook"*

      Again, as with the other proffered evidence, there is not any evidence that the time frame of the "notebook" conforms with the time frame of Mr. Harun's presence at the place where it was found. Also, the "notebook" lacks relevance because it sets forth merely ordinary and straightforward military training, and not any terrorist program. Indeed, the U.S. military provides similar training to its troops.

      Moreover, in another remarkable example of circular argument, the government, in its motion at 9, claims that the "notebook," which it also inexplicably describes as "self-authenticating," is admissible as a co-conspirator's statement because

> the document itself provides ample context to infer that the document's author was also involved in the same plot to kill Americans, plainly indicates that the statement identifying the name of the military training camp as Camp Malik, was made by an unidentified coconspirator in furtherance of the charged conspiracy.

      Yet the government fails to explain how that could apply to a document that does not mention any terrorist activity or plans, much less any agreement to kill Americans. Also, again, for the same reasons set forth **ante**, at 4-5, 6, the "notebook" cannot qualify as a statement against penal interest pursuant to Rule 804(B)(3).

      D.    *The "Ashafa Travel Documents"*

      Regarding the "Ashafa Travel Documents," the government has failed to provide any evidence that the Mohamed Ashafa named in the documents is the Mohamed Ashafa described by Mr. Harun in his statements. The government has not cited any evidence with respect to how many Mohamed Ashafa's there are in Nigeria, or any other narrowing principle that would justify an inference that the Mohamed Ashafa in the travel documents is the Mohamed Ashafa in Mr. Harun's statements.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Brian M. Cogan
United States District Judge
Eastern District of New York
February 28, 2017
Page 7 of 11

In contrast, in *United States v. Pluta*, 176 F. 43, 49-50 (2d Cir. 1999), cited by the government in its motion, at 11, the passports at issue were found in the defendant's suitcase and identified two women whom had been found by authorities hiding in the bushes. Likewise, in *United States v. Grady*, 544 F.2d 598, 604 (2d Cir. 1976), the records linked serial numbers to specific seized weapons transferred in violation of export control regulations. Thus, neither case is apposite.[3]

**III.    The Evidence Should Be Precluded Pursuant to Rule 403, Fed.R.Evid.,
Because It Is Cumulative and/or Misleading, Would Confuse the Jury, and/or
Its Prejudicial Impact Substantially Outweighs Any Probative Value It Might Possess**

Throughout this case, the government has persistently contended that the evidence against Mr. Harun is overwhelming, and that his statements establish his guilt beyond any question. Yet, on the eve of trial, the government proffers a significant volume of evidence that is inadmissible because it is cumulative and misleading, would confuse the jury with respect to the issues at trial, and/or would exert a prejudicial impact that substantially outweighs any probative value it might possess.

In fact, the government's current motion in material respects replicates the type of evidence and even witnesses the Second Circuit addressed and precluded in *United States v. Al-Moayad*, 545 F. 3d 139 (2d Cir. 2008) – in which some of the testimony and material at issue was provided by CW-1's co-defendant (who traveled overseas to Afghanistan with him).

Consequently, the evidence should be precluded pursuant to Rule 403, Fed.R.Evid.

    A.    *The Analysis Required Pursuant to Rule 403, Fed.R.Evid.*

Pursuant to Rule 403, Fed.R.Evid., even *relevant* evidence may be excluded at trial when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," or by "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, Fed.R.Evid.

The Advisory Committee's notes to Rule 403 define "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly though not necessarily, an emotional one." Thus, the Supreme Court has stated that unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172,

---

[3] Also, in both cases the Second Circuit found any error in admitting the records to be harmless.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Brian M. Cogan
United States District Judge
Eastern District of New York
February 28, 2017
Page 8 of 11

180 (1997).

### B. *The Proffered Evidence Is Cumulative and/or Misleading*

The cumulative nature of the evidence proffered in the government's *in limine* motion is compounded by the government's inability to connect any of it to Mr. Harun. In proffering this evidence, the government seeks improperly to buttress any evidence directly related to Mr. Harun with evidence lacking any such connection.

Thus, its cumulative nature is even more acute because the evidence *is not about Mr. Harun*, but instead about others, in different time periods, possibly in different locations, having different experiences (than Mr. Harun).

Also, the government (particularly in the final paragraph at 6) cites what it considers an avalanche of other evidence against Mr. Harun, thereby establishing beyond dispute that the evidence proffered in its motion is decidedly cumulative.

Indeed, given the proffered testimony of government expert Evan Kohlmann, either Mr. Kohlmann's testimony or the evidence proffered in the government's motion is cumulative. Both simply comprise, in many respects, the same evidence. Nor is characterizing Mr. Kohlmann's simple citation to internet reporting as "opinion" sufficient to distinguish them from each other. *See* Government Motion, at 3.

### C. *The Proffered Evidence's Prejudicial Impact Substantially Outweighs Any Probative Value It Might Possess*

Even if the proffered evidence possesses any probative value, which, it is respectfully submitted, it does not, it is so marginal and incremental that it is substantially outweighed by its undue prejudice to Mr. Harun. Indeed, the government's repeated reference to the overwhelming evidence against Mr. Harun merely proves the point.

In *Al-Moayad,* the Second Circuit reversed a conviction for a violation of 18 U.S.C. §2339B because the government was permitted to introduce irrelevant, inflammatory, and overly prejudicial evidence relating to violent terrorist acts with which the defendants were not charged, and/or with which they were not associated.

In *Al-Moayad*, the defendants "were convicted of conspiring to provide material support to designated terrorist organizations *Hamas* and *Al-Qaeda*, and attempting to provide material support to *Hamas*." *Id.*, at 145. Over defense objection, the government in *Al-Moayad* was permitted to introduce the testimony of Yahya Goba – a cooperating witness and co-defendant of

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Brian M. Cogan
United States District Judge
Eastern District of New York
February 28, 2017
Page 9 of 11

CW-1 – who was convicted of material support for *Al-Qaeda*, and who had attended an *Al-Qaeda* training camp in Afghanistan, *id.*, at 156-57;  the testimony of Gideon Black – a victim of a bus bombing in Tel Aviv, Israel, that was attributed to *Hamas*, *id.*, at 147, 152-53;   notes taken by a (different) cooperating witness during his conversations with the defendants, *id.*, at 147-48, 154-55;  a video of a wedding speech in which the defendants were mentioned, *id.*, at 147, 155;  "a document that appeared to be an application form for a *mujahidin* training camp," *id.*, at 156;  and several documents seized from two Yemeni men who were crossing the Croatian border in 1995.  *Id.*, at 157.

In *Al-Moayad*, the Court held that the improper admission of Mr. Goba's "testimony about the [*al Qaeda* training] camp, and particularly the government's presentation of images of Bin Laden and [Ayman] Al-Zawahiri, was reversible error." *Id*., at 163.  The Court also noted that the testimony was "highly inflammatory and irrelevant."  *Id.*[4]

The defendants in *Al-Moayad* also challenged the admission of Mr. Black's testimony because, evaluated pursuant to Rule 403, Fed.R.Evid., it was substantially more prejudicial than probative. *Id*., at 159-62.  Reversing the convictions, the Second Circuit pointed out that the "defendants were not charged with planning or carrying out the Tel Aviv bus bombing." *Id*., at 160.

Moreover, the defendants never "denied knowing about Hamas's involvement in violent acts and they both offered to stipulate as to that knowledge, essentially limiting the government's burden of proof." *Id.* The Court stated that "in light of these concessions" the probative value of the testimony was seriously diminished and the district court erred in admitting the testimony. *Id.*

Similarly, regarding the introduction of testimony relating to violence, the Court in *Al-Moayad* held that "[g]iven the inflammatory, highly charged, and extensive nature . . . there was a significant danger that it caused undue prejudice and 'lure[d] the fact finder into declaring guilt on a ground different from proof specific to the offense charged." *Id*., at 166, *quoting United States v. Awadallah*, 436 F. 3d 125, 133 (2d Cir. 2006), *in turn quoting Old Chief v. United States*, 519 U.S. 172, 180 (1997).

In *Al-Moayad*, while the government argued that both the wedding video and the *mujahidin* form were admissible as co-conspirator statements pursuant to Rule 801(d)(2)(E),

---

[4] In addition, the Court in *Al-Moayad* also held that the cooperating informant's handwritten notes were inadmissible – they were neither prior consistent statements nor proper rebuttal evidence.  *Id.*, at 173-75.

LAW OFFICES OF  
**JOSHUA L. DRATEL, P.C.**

Hon. Brian M. Cogan  
United States District Judge  
Eastern District of New York  
February 28, 2017  
Page 10 of 11

Fed.R.Evid. *id*, at 166-68, the Second Circuit concluded that evidence that one of the defendants had a relationship with Bin Laden at some unspecified time in the past, and the mere fact that the defendant's name was written on the *mujahidin* form was "not competent proof of their joint involvement in a conspiracy." *Id*., at 174.

      D.    *The Proffered Evidence Is Rendered Irrelevant By the Defense's Offers to Stipulate Regarding Certain Issues*

*Al-Moayad* is particularly instructive with respect to the posture of this case, in which the defense has offered in the context of Mr. Harun's motion pursuant to *Daubert*, to concede and/or stipulate with respect to specific issues. In *Al-Moayad*, the government wanted to introduce testimony as to the terrorist activity and other violent acts of *Hamas*, even though the defendants had offered to stipulate to their knowledge of *Hamas*' terrorist activities.

Yet, as the Court noted, "what counts as the Rule 403 'probative value' of an item of evidence . . . may be calculated by comparing evidentiary alternatives." 545 F.3d at 160, *quoting Old Chief*, 519 U.S. at 184. *See also United States v. Pepin*, 514 F. 3d 193, 206-07 (2d Cir. 2008) (Rule 403 "permits a judge to consider both the defendant's willingness to stipulate and the potential for prejudice [in later phases] in conducting the requisite [Rule 403] balancing").

Ultimately, the Court in *Al-Moayad* determined that "the defendants offered an adequate evidentiary alternative at trial – to stipulate their knowledge of Hamas' terrorist activities" and that as a result the "probative value of [the proposed] testimony was diluted . . . in comparison with its considerable prejudicial value." 545 F.3d at 161.

Here, in light of the defense's willingness to stipulate to Mr. Harun's knowledge of *al Qaeda*'s violent acts, as well as to *al Qaeda*'s designation as an FTO, this case is identical to *Al-Moayad*. The government's burden of proof as to those elements is eliminated, as is the probative value of any testimony regarding these elements.

Conversely, the likelihood that the jury will be prejudiced by testimony relating to violent acts is significant and substantially outweighs the diminished – if any – probative value of the proffered testimony. Accordingly, the government's proffered evidence should be precluded, and its motion denied. *See* Rule 403, Fed.R.Evid.

<table>
<tr><td>LAW OFFICES OF<br>**JOSHUA L. DRATEL, P.C.**</td><td>Hon. Brian M. Cogan<br>United States District Judge<br>Eastern District of New York<br>February 28, 2017<br>Page 11 of 11</td></tr>
</table>

## Conclusion

Accordingly, for all the reasons set forth above, it is respectfully submitted that the government's motion *in limine* be denied in its entirety.

Respectfully submitted,

Joshua L. Dratel

JLD/