LAW OFFICES OF

## JOSHUA L. DRATEL, P.C.

A PROFESSIONAL CORPORATION

29 BROADWAY
Suite 1412
NEW YORK, NEW YORK 10006
---
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: JDratel@joshuadratel.com

JOSHUA L. DRATEL  
—  
LINDSAY A. LEWIS  
WHITNEY G. SCHLIMBACH

STEVEN WRIGHT  
*Office Manager*

April 19, 2017

**BY ECF**

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

                Re:   *United States v. Adnan Harun Hausa*,
                            12 Cr. 134 (BMC)

Dear Judge Cogan:

      This letter is submitted on behalf of defendant Ibrahim Adnan Harun Hausa ("Mr. Harun"), whom David Stern, Esq., and Susan G. Kellman, Esq., and I represent in the above-entitled matter, and constitutes Mr. Harun's reply to the government's opposition, set forth in its March 30, 2017, letter (Docket #268), to Mr. Harun's motion(s) for a judgment of acquittal on Count One pursuant to Rule 29(a), Fed.R.Crim.P. (Docket #252).[1]

      As detailed below, it is respectfully submitted that the government has failed to counter Mr. Harun's motion(s) with respect to Count One of the Indictment, and that as a result his motion for a judgment of acquittal on that count, and any counts that are dependent on it, should be granted.

---

[1] Mr. Harun's reply with respect to his Rule 29 motion regarding Count Two (Docket #251) is being filed in a separate letter.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Brian M. Cogan
United States District Judge
Eastern District of New York
April 19, 2017
Page 2 of 9

**I.      A JUDGMENT OF ACQUITTAL MUST BE ENTERED FOR
COUNT ONE AND/OR COUNT ONE SHOULD BE DISMISSED
FOR LACK OF JURISDICTION BECAUSE THE GOVERNMENT
HAS FAILED TO CHARGE AND/OR PROVE BEYOND A
REASONABLE DOUBT AN ESSENTIAL ELEMENT OF THE
OFFENSE CHARGED – NAMELY THAT AN OBJECTIVE OF
THE CHARGED CONSPIRACY WAS TO MURDER UNITED
STATES NATIONALS WITHIN THE SPECIAL MARITIME
AND TERRITORIAL JURISDICTION OF THE UNITED STATES**

The government's opposition to Mr. Harun's motion for a judgment of acquittal with respect to Count One is more remarkable for what it fails to address rather than what it contains. For example, it is silent regarding:

- the string of recent Supreme Court cases defining and substantially limiting the extraterritorial application of U.S. criminal statutes, all of which opinions have been issued, with one easily distinguishable exception discussed below, *after* any of the cases cited by the government were decided;[2]

- the language of 18 U.S.C. §§2332(a) and (b)(1), which stand in stark and instructive contrast to that of §2332(b)(2), which is the offense charged in Count One;

- §2332(b)(2)'s incorporation of 18 U.S.C. §1111(a), thereby creating a compound statute requiring an additional layer of analysis (*see* Mr. Harun's Initial Memo of Law [Docket #252], at 5-6, 9-11); and

- the rules of statutory construction that deny §2332(b)(2) extraterritorial application to conspiracies to murder U.S. nationals who are located overseas.

Instead of confronting the lack of extraterritorial application of §2332(b)(2) to conspiracies to murder U.S. nationals when those victims are *outside* the United States, *see* Initial Memo of Law (Docket #252), and the consequent flaws in Count One, the government cites a string of cases that (1) predate the sea change in the jurisprudence of extraterritoriality

---

[2] The government's reduction of any mention of those cases to a footnote with the conclusory claim that the presumption against extraterritoriality does not apply because Congress's intent with respect to §2332(b) is "clear" not only begs that question entirely, but *evades* the question with respect to §2332(b)(2) in particular, which is the subject matter of this motion.

LAW OFFICES OF  
**JOSHUA L. DRATEL, P.C.**

Hon. Brian M. Cogan  
United States District Judge  
Eastern District of New York  
April 19, 2017  
Page 3 of 9

augured by the series of Supreme Court opinions – and in some sense rely on doctrine explicitly rejected by those opinions (and by subsequent Second Circuit cases); and/or (2) do not involve the issue presented herein, and therefore not only not controlling, but offer little if any guidance for decision.

Nor does the government even attempt to reconcile §2332(b)(2) and Count One with fundamental canons of statutory construction that support Mr. Harun's motion and compel dismissal of Count One. In that context, this Reply will first distinguish the few cases cited by the government, and afterward expand on the relevant concepts of statutory construction that apply to this motion.

A.  *The Cases Cited By the Government Are Distinguishable and Therefore Inapposite*

The cases cited by the government (in its letter, at 2) – with one exception decided prior to the series of Supreme Court cases discussed in Mr. Harun's Initial Memo of Law (Docket #252), at 3-8 – are easily distinguishable because they either (a) were based on now-flawed doctrinal premises; and/or (b) did not address the specific issue raised in this case, but instead at most discussed §2332(b)(2)'s extraterritoriality *generally*.[3]

For example, in *United States v. Al Kassar*, 660 F.3d 108 (2d Cir. 2011), decided after *Morrison, et. al., v. National Australia Bank Ltd, et. al.*, 561 U.S. 247 (2010), the first of the recent Supreme Court decisions regarding extraterritoriality,[4] the issue was framed by the Second Circuit as follows:

> [t]he defendants argue that federal subject-matter jurisdiction is lacking because: First, there is an insufficient nexus between their conduct and the United States for U.S. law to apply to them; second, any nexus that does exist was created by the DEA agents, not the defendants.

*Id*., at 117.

Clearly, those issues do not replicate the very precise claim Mr. Harun has raised herein.

---

[3] One case cited by the government, *United States v. Hamidullin*, 114 F. Supp.3d 365 (E.D. Va. 2015), has already been distinguished in Mr. Harun's Initial Memo of Law, at 12-13 & n.7.

[4] The opinion in *Al Kassar* does not even mention, much less analyze, the impact of *Morrison*. *See also* Initial Memo of Law, at 3-4.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Brian M. Cogan
United States District Judge
Eastern District of New York
April 19, 2017
Page 4 of 9

More specifically, though, in *Al Kassar*, the Court began its analysis with the assertion that "[t]he presumption that ordinary acts of Congress do not apply extraterritorially, *see Sale v. Haitian Ctrs. Council, Inc.,* 509 U.S. 155, 173 (1993), does not apply to criminal statutes." 660 F.3d at 118.[5]

Yet, as the Second Circuit made quite plain in *United States v. Vilar*, 729 F.3d 62, 72 (2d Cir. 2013) ("the presumption against extraterritoriality applies to criminal statutes") – foreshadowing the Supreme Court's agreement in *RJR Nabisco v. European Community*, ___ U.S. ___, 136 S. Ct. 2090, 2103 (2016) – the presumption against extraterritoriality *does* indeed apply to criminal statutes. *See also* Mr. Harun's Initial Memo of Law, at 7. Thus, the very jurisprudential premise in *Al Kassar* no longer applies.

In addition, the Court in *Al Kassar* referenced the extraterritoriality of only §2332(b) – not §2332(b)(2) specifically – and generically at that. 660 F.3d at 118. That is not at all dispositive here because, as acknowledged in Mr. Harun's Initial Memo of Law, at 9, §2332(b)(2) does have *some* extraterritorial aspect, as it reaches "whoever outside the United States" conspires to murder [as defined by 18 U.S.C. §1111(a)] a U.S. national.

Interestingly, though, the Court did cite, *id.*, with approval the District Court's decision in *United States v. Bin Laden*, 92 F. Supp. 189 (S.D.N.Y. 2000) – discussed at length in Mr. Harun's Initial Memo of Law, at 11-12 – with respect to the extraterritorial application of 18 U.S.C. §1114 & §1117, and notably *not* §1111, which the Court in *Bin Laden* had held did *not* apply to the murder of U.S. nationals overseas. The Court in *Al Kassar* next then proceeded to analyze jurisdiction as limited by due process principles (and therefore never addressed the issue presented herein). 660 F.3d at 118.

Similarly, in *United States v. Ramzi Yousef*, 927 F. Supp. 673 (S.D.N.Y. 1996), *aff'd* 327 F.3d 56 (2d Cir. 2003), the Court noted that the defendants "challenge[d] jurisdiction on the grounds that the indictment fails to indicate any evidence that Defendants' actions targeted specific nationals or property of the United States." *Id.*, at 680 (citation omitted).

Indeed, most of the jurisdictional discussion in *Ramzi Yousef* related to 18 U.S.C. §32(a), which includes its own special jurisdictional section designed to conform to the U.S.'s treaty obligations under the Suppression of Unlawful Acts against the Safety of Civil Aviation ("the Montreal Convention"), 24 U.S.T. 565, T.I.A.S. 7570. 927 F. Supp. at 678-80.

---

[5] Nor did *Al Kassar* even mention *United States v. Gatlin*, 216 F.3d 207 (2d Cir. 2000), *abrogated on other grounds*, *United States v. Jamal Yousef*, 750 F.3d 254, 262 (2d Cir. 2014), which applied the presumption to the criminal statute at issue in that case. 216 F.3d at 211.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Brian M. Cogan
United States District Judge
Eastern District of New York
April 19, 2017
Page 5 of 9

Also, in the context of defendants' argument in *Ramzi Yousef*, the District Court stated out that §2332, "which proscribes conspiracy to kill United States citizens *abroad*, clearly applies extraterritorially[,]" *id*., at 682 (emphasis in original), but failed to consider (as it was not necessary in that case) the precise language of §2332(b)(2) in juxtaposition with §2332(b)(1) or §2332(a) and §2332a(a)(1), which is the issue herein. *See also* Initial Memo of Law, at 9-11.

Similarly, the issue herein was not addressed or decided in *United States v. Alwan*, 822 F. Supp.2d 672 (W.D.Ky. 2011), also cited by the government. Rather, the Court in *Alwan* pointed out that the defendant's "objection revolves around the connection between Article 64 of the Geneva Civilian Convention, 18 U.S.C. §§ 2332(b)(2) and 2332a(a)(1), and whether the former prevents a criminal indictment for terrorist activities performed in a country under United States military occupation." 822 F. Supp.2d at 674.

Thus, the Court in *Alwan* described as follows the question it needed to answer: "are sections 2332 and 2332a of the federal criminal code intended to apply to foreign nations where the armed forces are currently engaged in conflict?" *Id*. Again, of course, that is *not* the question raised here by Mr. Harun. *See also id*., at 677 (concluding that "[t]he present legal climate adopts the Government's view that sections 2332 and 2332a may be extended to criminalize insurgent and terrorist activities in other countries even though those same acts may be punishable in Iraqi courts as well"). *Cf. United States v. Gatlin*, 216 F.3d 207, 223 (2d Cir. 2000) (noting that despite the unavailability of U.S. extraterritorial jurisdiction, individuals committing the conduct at issue "are usually subject to prosecution" by the local authorities where the conduct occurred), *abrogated on other grounds*, *United States v. Jamal Yousef*, 750 F.3d 254, 262 (2d Cir. 2014)

Moreover, in *Alwan*, the District Court asserted that "section 2332 explicitly states that it criminalizes extraterritorial murders and conspiracies to murder, but does not restrict itself by way of geographic region or conflicts within those regions." 822 F. Supp.2d at 675. However, that reverses the presumption *against* extraterritoriality, as silence is *not* inclusion, but rather exclusion. As the Supreme Court has made abundantly clear, if a statute is not expressly extraterritorial in nature, it does not apply extraterritorially. *See also* Initial Memo of Law, at 3-5.

Nor, as in *Alwan*, is it sufficient merely to cite §2332(b) generally for the proposition that it "criminalizes 'attempts to kill, or . . . conspirac[ies] to kill, a national of the United States' by individuals outside the United States." *Id*., at 674 (brackets supplied by the Court in *Alwan*). In fact, in *Alwan*, the District Court's reference to "[s]ection 2332's unmistakable references to extraterritoriality and foreign nationals have led courts to reject claims that it does not criminalize violent acts on foreign soil[,]" *id*., at 676, could not have been in regard to §2332(b)(2), which does *not* mention "foreign nationals" at all.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Brian M. Cogan
United States District Judge
Eastern District of New York
April 19, 2017
Page 6 of 9

As detailed in Mr. Harun's Initial Memo of Law, at 9-11, that does not resolve the question here at all because, as noted **ante**, §2332(b)(2) includes an extraterritorial aspect – that a conspirator be outside the U.S. – but not the requisite component herein, namely, that the murder, as defined by §1111(a), occur overseas.[6] Moreover, the reference to §2332 generally simply distances *Alwan* further from this case, as §2332(a) refers specifically to murders of a U.S. national "while such national is outside the U.S." *Id.*, at 677.[7]

Accordingly, the government's cases are inapplicable, and its opposition fails to overcome the presumption against extraterritoriality with respect to §2332(b)(2)'s application in Count One in this case.

**B.**     *The Applicable Rules of Statutory Construction Compel Dismissal of Count One*

Application of multiple rules of statutory construction further demonstrates that §2332(b)(2) cannot be interpreted to apply to U.S. nationals outside the U.S. In addition to the canon of construction set forth in Mr. Harun's Initial Memo of Law, at 10, §2332(b)(2)'s lack of extraterritoriality to conspiracies to murder U.S. nationals *outside* the U.S. is buttressed by the instruction that courts should construe a statute so that "effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004). *See also Alaska Department of Environmental Conservation v. EPA,* 540 U.S. 461, 489 n.13 (2004) ("if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant").[8]

---

[6] In its analysis, the District Court in *Alwan* cited both *Ramzi Yousef* and *Bin Laden*. 822 F. Supp.2d at 676.

[7] In fact, §2332(a) also includes that very language, criminalizing the use of, or conspiracy to use, a weapon of mass destruction against a U.S. national "while such national is outside of the United States[,]" thereby, as with §2332a(a)(1), demonstrating Congress's ability to explicitly distinguish between conduct against U.S. nationals within or outside of the U.S.

[8] Similarly, in *Alwan* the District Court explained that

> the Supreme Court has repeatedly counseled "'that a legislature says in a statute what it means and means in a statute what it says there.'" *Arlington Cent. Sch. Dist. Bd. of Ed. v. Murphy,* 548 U.S. 291, 296 (2006). quoting *Conn. Nat. Bank v. Germain,* 503 U.S. 249, 253-54 (1992).

822 F. Supp.2d at 675.

|  |  |
|---|---|
| LAW OFFICES OF<br>**JOSHUA L. DRATEL, P.C.** | Hon. Brian M. Cogan<br>United States District Judge<br>Eastern District of New York<br>April 19, 2017<br>Page 7 of 9 |

That doctrine is closely related to the "whole statute" canon, which provides that

> [a] court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, . . . and fit, if possible, all parts into an harmonious whole. . . . Similarly, the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand.

*FDA v. Brown & Williamson Tobacco,* 529 U.S. 120,132-133 (2000) (citations and quotation marks omitted). *See also King v. Burwell,* ___ U.S. ___, 135 S. Ct. 2480, 2493 (2015) (a "provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme") (internal quotation marks omitted).

Thus, all words of a statute should be given effect, if possible, consistent with the theory that all of the words have meaning since Congress does not include unnecessary language, or "surplusage." *See Hibbs v. Winn,* 542 U.S. at 101 ("[t]he rule against superfluities complements the principle that courts are to interpret the words of a statute in context"); *see also Corley v. United States*, 556 U.S. 303, 314 (2009); *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 216 (1995)(words in a statute will not be treated as "utterly without effect" even if the consequence of giving them effect is to render the statute unconstitutional).

Here, the interplay between §2332(a) and §2332(b)(1), and the very distinct and specific language differences between them and §2332(b)(2), as well as §2332(b)(2)'s integration of §1111(a), provides the essential context establishing that §2332(b)(2) does not reach conspiracies to murder U.S. nationals when the U.S. nationals – as opposed to the conspirators – are outside the U.S. *See also* Initial Memo of Law, at 9-11.

In that context, the Supreme Court's decision earlier this month in *Dean v. United States*, ___ U.S. ___, 2017 WL 1199461 (April 3, 2017), is instructive as well. In interpreting 18 U.S.C. §924(c) with respect to sentencing, the Court emphasized that Congress knew full well – as demonstrated by 18 U.S.C. §1028A, how to use the specific language the government claimed applied to §924(c). 2017 WL 1199461, at *6 (§1028A "says just what the Government reads §924(c) to say – of course, without *actually* saying it").

The same is true here with respect to the language of §2332(b)(2) compared with §2332(a), §2332(b)(1), and §2332a(a)(1). *See also* Initial Memo of Law, at 9-11. Likewise, in *Dean* the Court recognized that even though §1028A was enacted 20 years after §924(c) was amended, that distinction merely "confirms that it would have been easy enough to make explicit what the Government argues is implicit in § 924(c)[,]" but did not do so, thereby declining to "mirror [the language] of §1028A." *Id. See also Gatlin*, 216 F.3d at 223 (noting that only

| | |
|---|---|
| LAW OFFICES OF<br>**JOSHUA L. DRATEL, P.C.** | Hon. Brian M. Cogan<br>United States District Judge<br>Eastern District of New York<br>April 19, 2017<br>Page 8 of 9 |

Congress has the authority to enact legislation "to close the jurisdictional gap").

Moreover, another rule of statutory construction – the rule of lenity – narrows the scope of §2332(b)(2), and denies it extraterritorial application when the U.S.-national victims are outside the U.S. The rule of lenity instructs that when interpreting a criminal statute that does not explicitly reach the conduct in question, courts should be reluctant to base an expansive reading of the statute on inferences. *See Williams v. United States*, 458 U.S. 279, 286 (1982) (applying rule of lenity to a false statements statute).

As the Supreme Court has instructed, "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before [choosing] the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *United States v. Bass*, 404 U.S. 336, 347 (1941).

In *United States v. Brown*, 459 F.3d 509 (5th Cir. 2006), in the context of 18 U.S.C. §666, the Fifth Circuit declared, "[w]e resist the incremental expansion of a statute that is vague and amorphous on its face and depends for its constitutionality on the clarity divined from a jumble of disparate cases. Instead, we apply the rule of lenity and opt for the narrower, reasonable interpretation that here excludes the Defendants' conduct." 459 F.3d at 523, *citing McNally v. United States*, 483 U.S. 350, 360 (1987). *See also United States v. Ford*, 435 F.3d 204, 211 (2d Cir. 2006) ("[a]s the Supreme Court noted in its recent decision in [*Arthur Andersen*, 544 U.S. 696, 703-704 (2005)], restraint must be exercised in defining the breadth of the conduct prohibited by a federal criminal statute out of concerns regarding both the prerogatives of Congress and the need to give fair warning to those whose conduct is affected").

Even when "the government and [the defendant] each rely on a reasonable meaning of [the statute at issue], . . . ." the rule of lenity is applicable. *United States v. Dauray*, 215 F.3d 257, 262 (2d Cir. 2000). *See also Gatlin*, 216 F.3d at 215 (when "an alternative construction of the statute" that it is not extraterritorial "is 'not implausible[,]'" the presumption against extraterritoriality has not been overcome), *disagreeing with United States v. Erdos*, 474 F.2d 157, 159 (4th Cir. 1973).

Thus, here, even if the government's interpretation of §2332(b)(2) were reasonable, the rule of lenity would apply because Mr. Harun's construction of the statute is (at the very least) not implausible, thereby preserving the presumption against extraterritoriality that applies to all federal statutes, including §2332(b)(2) as applied to Mr. Harun in this case.

LAW OFFICES OF

**JOSHUA L. DRATEL, P.C.**

Hon. Brian M. Cogan
United States District Judge
Eastern District of New York
April 19, 2017
Page 9 of 9

**II.    COUNT ONE MUST BE DISMISSED, OR
A JUDGMENT OF ACQUITTAL ENTERED
THEREON, BECAUSE THE GOVERNMENT
HAS FAILED TO OBTAIN THE REQUISITE
CERTIFICATION TO PROCEED WITH THIS
PROSECUTION PURSUANT TO 18 U.S.C. §2332(d)**

In response to POINT II of Mr. Harun's Rule 29 motion – regarding the certification pursuant to 18 U.S.C. §2332(d) the prosecution must obtain to proceed under 18 U.S.C. §2332 – the government has provided, as Exhibit 1 to its letter, a certification. However, that certification, curiously, is undated, and therefore does not establish that it was obtained in a timely manner.

## Conclusion

Accordingly, for all the reasons set forth above, as well as in Mr. Harun's Initial Memos of Law, it is respectfully submitted that his Rule 29 motions should be granted in their entirety.

Respectfully submitted,

Joshua L. Dratel

JLD/