# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

UNITED STATES OF AMERICA,                           12 Cr. 134 (BMC)

      v.

IBRAHIM SULEIMAN ADNAN HARUN HAUSA,          DECLARATION OF
                                             DAVID J.R. FRAKT

      Defendant.

-------------------------------------------------------------------x

STATE OF NEW YORK    )
                 ) ss.:
COUNTY OF NEW YORK  )

DAVID J. R. FRAKT, declares under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following is true and correct:

1.      My name is David J. R. Frakt. I graduated *summa cum laude* from the University of California, Irvine with a B.A. in History in 1990. I earned my J.D. *cum laude* from Harvard Law School in 1994. I have had extensive post-graduate level professional military education in the Air Force, including Squadron Officer's School (*Distinguished Graduate*), Air Command and Staff College and Air War College (*Excellent Graduate*).

2.      Immediately after law school, I served as a law clerk for the Hon. Monroe G. McKay, former Chief Judge of the U.S. Court of Appeals for the Tenth Circuit. During this one-year clerkship, I was commissioned as a First Lieutenant in the U.S. Air Force on December 30, 1994. At the conclusion of my clerkship, I entered active duty in September 1995 as a member of the Air Force Judge Advocate General's Corps, or JAG. I served on active duty in the JAG Corps until April 2005, with assignments in Germany, Utah, Hawaii and Louisiana. While on active duty, I had two primary areas of practice: criminal law (both as a military prosecutor, military defense counsel, and Special Assistant U.S. Attorney) and international and operational law, which encompasses the law of armed conflict (LOAC), also known as the "law of war". I have received extensive formal training and on-the-job training in LOAC, including courses in the law of war at the Army Judge Advocate General's School and the Air Force Judge Advocate General's School, and training to be a legal advisor at an Air Operations Center, where aerial

1

bombardment campaigns are planned.  I have developed and taught classes in the law of war for other military lawyers, including the inaugural Pacific Air Forces Joint Operations Law Training (JOLT) in Hawaii in 2002, which was designed to prepare JAGs for deployment to active theaters of military operations.

3.      In 2005, I was honorably discharged from the active duty Air Force and transitioned into the Air Force Reserves. In May of 2005, I started a second career as a law professor.  As a law professor, my teaching and scholarship focused on the areas in which I had specialized in the military, namely criminal law, military law and international law.  I taught full-time as a law professor for seven years at three different law schools, most recently as a Visiting Professor at the University of Pittsburgh School of Law in 2012-13. I taught courses in criminal law, criminal procedure, military law, the law of war, and war crimes, among other subjects.  In 2008, while serving an active duty deployment, I developed and taught a course entitled: "Terrorism as a War Crime: Military Commissions and Alternative Approaches" as an adjunct professor at Georgetown Law School.  The course was offered both to Georgetown J.D. students and students pursuing an advanced law degree (LL.M.) in National Security Law.

4.      Since April 2005 to the present, I have been an active Reserve JAG Officer, averaging over 140 days per year of military service, including numerous extended active duty tours and a deployment.  From April 2008-August 2009, I was voluntarily recalled to active duty to serve as a military defense counsel with the Office of Military Commissions, Office of the Chief Defense Counsel. During this period, I served as lead defense counsel in two military commission cases at Guantanamo, including one of only two cases to ever go to trial at Guantanamo (U.S. v. Ali Hamza al Bahlul).  In the other case, (U.S. v. Mohammed Jawad) I was involved in extensive pretrial litigation which ultimately resulted in all charges being dismissed. Both cases involved novel issues requiring extensive analysis of the law of war.  During my military career, I have won a variety of military awards and decorations, including the Air Force Meritorious Service Medal with four oak leaf clusters, the Joint Service Commendation Medal and a Global War on Terrorism Expeditionary Service Medal.

5.      I have an extensive record of publications, including multiple book chapters and over a dozen law review articles, including in the Harvard Human Rights Journal, the Duke Law Journal, the University of Pittsburgh Law Journal, Case Western Reserve Journal of International Law, and the American Journal of Criminal Law.  Many of these articles concern issues

surrounding the armed conflict between the United States and Al Qaeda and associated forces in which we have been involved since 9/11.

6.      In 2009, I was invited to testify before Congress on proposed reforms to the Military Commissions Act.[1] My testimony included a discussion of the law of war offenses potentially subject to trial by military commissions.  I was also appointed to be an expert consultant on legal issues surrounding Guantanamo detainees and the military commissions by the Organization for Security and Cooperation in Europe, Office of Democratic Institution and Human Rights (OSCE-ODIHR).  In this capacity, I prepared multiple expert reports, and provided training, including on LOAC and war crimes, to OSCE-ODIHR attorneys and human rights experts at their headquarters in Warsaw, Poland.  I have lectured widely at numerous law schools and other venues about LOAC, terrorism, military commissions, Guantanamo and related subjects, including at Harvard, Stanford, NYU, Duke, UCLA, Seton Hall, American, and Case Western Reserve law schools.

7.      Based on the above qualifications, I was appointed in this case by this Court as an expert consultant for the defense on the law of war.  In this capacity, I have been asked to provide some information related to the law of war which potentially may be considered relevant by this Court in determining an appropriate sentence. I am aware of the charges of which Mr. Harun has been convicted.  I have reviewed the discovery in the case and have reviewed the entire trial transcript, so I am familiar with the testimony and evidence that was presented in the case.  Obviously, the jury and this Court has found that Mr. Harun's conduct violated federal law, and that makes him a convicted criminal.  But from my analysis of his actions, he should not be considered a "war criminal" – for his actions did not violate the law of war.

8.      There is a popular conception, often repeated by senior leaders of the U.S. government, and mentioned more than once by the prosecutors in this case, and, indeed, by the Court itself, that al-Qaida and associated forces are terrorists who "do not comply with the laws of war".  In some cases, such as the 9/11 attacks, this is clearly true.  Hijacking a civilian airliner and using it to attack a civilian target like the World Trade Center is a clear and egregious

---

[1] *See*, Testimony of Major David J. R. Frakt before the Constitution, Civil Rights, and Civil Liberties Subcommittee of the House Judiciary Committee, Hearing on Proposals for Reform of the Military Commissions System, Fed. News Service, July 30, 2009, available at: http://judiciary.house.gov/hearings/pdf/Frakt090730.pdf

violation of the laws of war (assuming, *arguendo*, that the laws of war apply to that event, which presumes that it was part of an armed conflict). At other times, such as on the battlefields of Afghanistan, al-Qaeda militants have complied with the laws of war, using lawful military weapons and tactics against lawful military targets. The mere fact that al-Qaeda militants are labeled as unlawful combatants, and are not members of a national military force in uniform, does not mean that that they are not adhering to the laws of war. There is no prohibition under the laws of war against civilians directly participating in armed conflict., as Mr. Harun has been found to have done. Although unlawful combatants do not qualify for combatant immunity and prisoner of war status, their mere status as unlawful combatants is not itself a violation of the laws of war.

9. My review of the defendant's actions at the Battle of Angoor Ada, near the Skhin Firebase in April 2003, found no evidence that Mr. Hausa's conduct in engaging in hostilities violated the laws of armed conflict. Or to state it positively, Mr. Hausa's conduct in fighting against U.S. forces was in full compliance with the laws of armed conflict. He used lawful weapons, against lawful targets, in an active theater of armed conflict. Although not in uniform, he did not engage in perfidy. He did not conceal himself amongst the civilian population or use civilians as a shield. He carried his arms openly. He did not target civilians, only uniformed military personnel and military equipment and encampments. He did not use any prohibited means or methods of warfare. Rather, he engaged in a hard-fought battle against enemy forces, forces which were actively seeking to find al-Qaeda and Taliban militants like him and kill them. Although he would not be entitled to combatant immunity for his activities there, I cannot discern any basis for charging him with any violations of the law of war for his activities there, even though he participated in a battle that resulted in deaths and injuries to U.S. soldiers. Although the events were described by several witnesses as an "ambush", it is important to note that "ambushes" -- using concealment and surprise to gain a military advantage -- is perfectly lawful under the law of war.

10. It may also be considered relevant by the Court that there have literally been tens of thousands, and perhaps hundreds of thousands, of militants who, as members of al Qaida and associated forces, have participated in the ongoing armed conflict against the United States and coalition forces, a conflict commonly known as the Global War on Terror. In the Afghan theater of war, the United States has captured and detained several thousand militant fighters, both at the

4

Guantanamo Bay naval base in Cuba, and in detention facilities in Afghanistan.  Of the several thousand enemy fighters detained by the U.S., prosecutions, either in military commissions or in federal courts, for the simple act of fighting against U.S. coalition forces (as opposed to participating in a successful terrorist attack) are exceedingly rare. Indeed, this appears to be only the second federal prosecution of a foreign militant for fighting in Afghanistan during the entire 16-year war; and there has only been one conviction in a U.S. military commission based on comparable conduct, that of Omar Khadr.  Mr. Khadr's pled guilty to offenses stemming from his participation in the armed conflict in Afghanistan. His conviction is on appeal to the Court of Military Commission Review and is likely to be overturned based on binding rulings from the U.S. Court of Appeals for the D.C. Circuit.  Indeed, based on the "strong probability of success" of his appeal, a court in Canada, the country to which he was repatriated under his plea agreement, released him and he is currently free on bail.

I declare under penalty that the foregoing is true and correct to the best of my knowledge and belief.  28 U.S.C. §1746.  Executed December 11, 2017.

DAVID J. R. FRAKT

5